July 10, 2018

**E-FILED**

Hon. Nathanael M. Cousins
United States Magistrate Judge
United States District Court, Northern District of California
San Jose Courthouse, Courtroom 5 - 4th Floor
280 South 1st Street, San Jose, CA 95113

Re:   ***Hamm, et al. v. Mercedes-Benz USA, LLC*, USDC Case No. 5:16-cv-03370-EJD**

Dear Judge Cousins:

    Pursuant to Your Honor's Standing Order and the referral to you of discovery disputes in this matter, Defendant Mercedes-Benz USA, LLC ("MBUSA") and Plaintiffs Terry Hamm, Charlie Jacquo-Stevenson, and Bryce Meeker submit a joint discovery statement attached hereto as Attachment 1. Per the Court's Standing Order, the parties had sought leave to attach the disputed Rule 30(b)(6) deposition topics as an attachment, *see* Attachment 1A, but at the time of filing had not heard back from the Court's clerk. The parties are willing to further discuss with Your Honor the issues addressed in the statement telephonically or at an in-person hearing, and/or to submit further briefing on these issues.

                    Respectfully,

                    SQUIRE PATTON BOGGS (US)
                    LLP


                    By:_____/s/ Eric J. Knapp_____
                              Eric J. Knapp
                    Attorneys for Defendant
                    MERCEDES-BENZ USA, LLC



                    THE KATRIEL LAW FIRM


                    By:_____/s/ Roy A. Katriel_____
                              Roy A. Katriel
                    Attorneys for Plaintiff
                    TERRY HAMM, CHARLIE
                    JACQUO-STEVENSON, BRYCE
                    MEEKER, AND THE PUTATIVE
                    CLASS

# ATTACHMENT 1

## I.     MBUSA's Position

**Introduction** – MBUSA requests a protective order (i) limiting the scope of plaintiffs' Rule 30(b)(6) deposition notice (the "Notice") to topics relevant to their defect theory, and (ii) quashing the overbroad and redundant document requests included in the Notice. Plaintiffs allege that the valve bodies and conductor plates in 722.9 7G-Tronic automatic transmissions are defective as they prematurely fail, causing the vehicle to enter into "limp home mode." In their discovery responses, plaintiffs have identified the transmission control unit ("TCU")—a component of the conductor plate—as the root of this supposed defect, claiming it is unduly susceptible to transmission debris. Yet, plaintiffs have now served an improperly overbroad Notice on MBUSA that seeks testimony and documents on virtually every aspect and the hundreds of component parts of the 722.9 7G-Tronic transmissions, no matter how attenuated or unrelated they are to plaintiffs' defect theory. Settled law does not permit that.

Having defined the defect theory relevant to their case, plaintiffs cannot now seek discovery as to literally any issue with any part of the 722.9 transmissions.  This is especially true in the context of a Rule 30(b)(6) deposition, which requires MBUSA to put forward a witness knowledgeable about the topics encompassed by the notice.  722.9 transmissions are comprised of hundreds of parts, have evolved over time, and have been used in more than 15 model years of vehicles.  Thus, plaintiffs' Notice would require the witness to be familiar with an expansive array of parts and issues having no relevance to their claims.  Rule 30(b)(6) does not allow plaintiffs to saddle MBUSA with such an impossible task.

**Argument** – Recognizing that they cannot obtain certification of a class that implicates every issue with every 722.9 transmission component over 15 model years, plaintiffs have identified the allegedly defective component (the TCU), the failure mode (interference from debris), and the principal symptom (limp mode) they put at issue.  Yet, plaintiffs have served a Notice that is not tied to their claims and implicates almost every aspect of the 722.9s.  And although plaintiffs have since agreed to limit the scope of some deposition topics to issues concerning the repair or replacement of 722.9 valve bodies or conductor plates for claims of limp mode (as MBUSA proposed), for most others they continue to insist that MBUSA prepare a witness on a vast array of issues totally unrelated to their defect theory and wholly disproportionate to the needs of the case.  *See* Attachment 1A.

"A party who notices a Rule 30(b)(6) deposition should apply fairness and reasonableness to the scope of the matters that the witness is required to testify about." *Madrigal v. Allstate*, 2015 U.S.Dist. LEXIS 191875, at *12 (C.D. Cal. Apr. 22, 2015).  For "'Rule [30(b)(6)] to effectively function, the requesting party must take care to designate, *with painstaking specificity*, the *particular* subject areas that are intended to be questioned, and that are *relevant* to the issues in dispute.'"  *Mailhoit v. Home Depot U.S.A., Inc.*, 2012 U.S. Dist. LEXIS 196297, at *6 (C.D. Cal. Aug. 27, 2012) (quoting *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 638 (D. Minn. 2000)).  The topics plaintiffs continue to pursue are improperly overbroad, as they refer to every aspect of the 722.9 transmissions, rather than the specific parts and failure mode at issue.  Nothing in the overbroad topics limits the scope of inquiry to matters relevant to plaintiff's defect theory, as Rule 26(b)(1) requires.  *Everett v. BRP-Powertrain,*

*GmbH & Co. KG*, 2018 U.S. Dist. LEXIS 62127, at \*3-4 (E.D. Wis. Apr. 12, 2018) ("The plaintiff is not entitled to every design and manufacturing document relating to the engine. . . . Only those documents that relate to the plaintiff's theory of why the engine is defective would be relevant.").

In addition, plaintiffs' attempt to take discovery on virtually every aspect of the 722.9s is overly burdensome and not proportional to the needs of the case, particularly in the context of a Rule 30(b)(6) deposition—which requires the deponent to be knowledgeable about the identified topics. The 722.9s are among the most complex systems in Mercedes-Benz vehicles. Each such transmission is comprised of hundreds of different parts and components, has many different variants, and can experience a diverse array of symptoms. And because these transmissions have evolved over their use in 15 model years of vehicles, this complexity is magnified enormously.[1]

The Notice would require MBUSA's witness to be educated and knowledgeable as to an almost limitless array of topics bearing no relation to plaintiffs' defect theory. Any consumer complaint or lawsuit over the past 15+ years concerning any facet of the transmissions—whether a leaking transmission oil pump, a car stuck in neutral, or transmission noises—would be within the witness's scope of preparation. The same goes for any MBUSA communications with authorized dealers or any interactions with Daimler AG touching on any aspect of the 722.9 transmissions—repair instructions, operating information, and service bulletins regarding any transmission issue over 15 model years would all be within the witness's purview. Preparing a Rule 30(b)(6) witness for all of these topics would be impossible and is simply not required under the Rules. *See, e.g.*, *Apple Inc. v. Samsung Elecs. Co.*, 2012 U.S. Dist. LEXIS 9921, at \*10 (N.D. Cal. Jan. 27, 2012) (the task of preparing a Rule 30(b)(6) witness "becomes less realistic and increasingly impossible as the number and breadth of noticed subject areas expand"); *Reed v. Nellcor Puritan Bennett & Mallinckrodt*, 193 F.R.D. 689, 692 (D. Kan. 2000) ("An overbroad Rule 30(b)(6) notice subjects the noticed party to an impossible task."). Thus, the Notice topics should be limited to testimony relevant plaintiffs' defect theory, as reflected in MBUSA's proposals in the table above.

The Notice also improperly requests the production of documents for the above deposition topics in violation of Rule 30(b)(2) because plaintiffs failed to serve with the Notice a separate "request under Rule 34 to produce documents." Months ago, plaintiffs served Rule 34 requests, which the parties met and conferred on several times (to agree on search terms, etc.) and in response to which MBUSA produced thousands of pages of documents. Plaintiffs cannot use purported document requests in a 30(b)(6) notice to do an end-run of prior agreements and seek a "do over." In any event, the purported document requests are coextensive with the deposition topics and, therefore, are overbroad for the same reasons. Document requests included within a deposition notice "should be 'few and simple' and 'closely related to the oral examination sought.'" *Kretek v. Bd. of Comm'rs*, 2012 U.S. Dist. LEXIS 191914, at \*8 (D.N.M.

---

[1] Topics 2 and 4 are also improper because they seek testimony concerning what "MBUSA contends or intends to rely upon for arguing that classwide treatment is improper in this case." Such topics improperly call for attorney work product and seek MBUSA's litigation positions before plaintiffs have even filed their class certification motion. *Gossar v. Soo Line Railroad Co.*, 2009 WL 3570335, at \*2 (S.D. Ind. Oct. 27, 2009) (a party "may not serve a Rule 30(b)(6) notice for the purpose of requiring (the opposing party) to marshal all of its factual proof and prepare a witness to be able to testify on a particular defense").

Oct. 19, 2012).  Those that are "broad, extensive and wide-ranging," such as those here, "are not proper under Rule 30."  *Id.* at *8-*9.

Finally, Plaintiffs' purported justification for their overbroad Notice does not withstand scrutiny.  Although they claim the breadth of their Notice is necessary to test MBUSA's individualized causation defense (that a vehicle can go into limp mode for reasons unrelated to issues with the valve body or conductor plate), the topics in the Notice do ***not*** address MBUSA's defense.  For example, Topic 4 would encompass "modifications or changes" to ***any*** aspect of the 722.9 transmissions, even where they have no bearing on the valve body/conductor plate assembly or a vehicle entering into limp mode.  Similarly, Topic 5 would cover every single lawsuit or customer complaint regarding the 722.9 transmission, not just those where a vehicle went into limp mode or had a valve body or conductor plate replaced.  In short, things like design, analysis, supply, and research relating to parts like the torque converter have nothing to do with individualized ***causation***—which is a matter of expert proof in any event.  Plaintiffs' attempt to pursue discovery relating to virtually every facet of the 722.9 transmissions nonetheless is a fishing expedition, plain and simple, and is not allowed under the Rules of Civil Procedure.

## II.   PLAINTIFFS' POSITION

**Introduction And Argument** - MBUSA's motion for a protective order to limit the scope of Plaintiffs' Rule 30(b)(6) deposition of an MBUSA corporate designee is without merit and should be denied.  This is a putative class action in which owners and lessees of certain Mercedes vehicles distributed in California and Kansas by MBUSA and equipped with the Mercedes 7G Tronic 722.9 automatic transmission claim that the transmission is defective.  Unsurprisingly, the named plaintiffs, who bear the burden of persuasion both on the merits and in satisfying the Rule 23 criteria for class certification, seek deposition testimony from MBUSA's corporate designee with respect to matters pertaining to that particular transmission that are relevant to the upcoming class certification motion and to the merits of Plaintiffs' claims.  The topics of this deposition—the only one noticed by Plaintiffs in this action (hardly the mark of a party misusing the discovery process as an unduly burdensome "fishing" expedition)—were limited by Plaintiffs' notice so as to make clear that the focus of the deposition inquiry would be on those identified matters that detail the design, workings and components of the transmission and any elements of design or manufacture or modifications to the transmission  insofar as "MBUSA contends or intends to rely upon for arguing that classwide treatment in improper in this case."  *See, e.g.,* Table *supra,* at Plaintiffs' Noticed Topics 2 and 4.

MBUSA now improperly attempts to limit the deposition topics to questioning only with respect to the transmission valve body and conductor plate.  Its reasoning is that these are the transmission components that Plaintiffs' fact interrogatory responses identified as entailing the alleged defect.  But setting aside that Plaintiffs' fact discovery response was a preliminary one, before any expert opinion testimony or expert discovery had been undertaken (a reservation that Plaintiffs' interrogatory responses made clear), MBUSA's reasoning is flawed for a more basic independent reason.  While *Plaintiffs* may contend that the transmission valve body and conductor plate are the culprits for the alleged defect manifestation in all class vehicles, the fact

is that *MBUSA does not agree that the reasons for the alleged transmission malfunctions are so limited or attributable to these components*.  To the contrary, in unsuccessfully seeking to dismiss Plaintiffs' pleading and in attacking the class allegations, MBUSA represented to the Court that classwide treatment is inappropriate here because of unspecified and innumerable differences in the 722.9 transmission found across a variety of Mercedes-branded vehicle models and model years.  As MBUSA pressed before Judge Davila, in its portion of the Joint Case Management Statement:

> Plaintiffs only own a 2006 CLK-350, 2007 S550, 2007 C230, and a 2008 E63. Their claims are not typical—and they are not adequate representatives—of Class Members who own a wide variety of vehicles, from the 'C-Class all the way to the more expensive S-Class,' as plaintiffs allege, sold over a 12-year period *with different technologies, manufacturing, design, and other huge variability*. Plaintiffs claim to own only four of the many different types of vehicles at issue, but *they allege no facts showing that the 722.9 transmission operates the same across different models, years and classes*, much less that all of the vehicles at issue were sold under the same circumstances.

Dkt. No. 30 [Joint Case Management Statement], at 4:13-20 (emphasis added).

MBUSA's plea for a protective order essentially argues that, given the complexity of a Mercedes automotive transmission, it is too burdensome an undertaking for MBUSA to prepare a witness to testify about the design, manufacture or modification to the 722.9 transmission unless this questioning is limited merely to the valve body and conductor plate components.  But this argument flies in the face of MBUSA's own representation to Judge Davila, which relied upon and emphasized the "huge" amount of supposed differences in design, technology, and modifications across the 722.9 transmission unit as a whole, not merely in their conductor plate or valve body parts.  As MBUSA urged upon Judge Davila in seeking dismissal of the case:

> That is, plaintiffs do not allege any facts demonstrating that vehicles made over different model years with different technologies, designs, *and huge numbers of other variations* are substantially similar to plaintiffs' different types of vehicles.[2]

Dkt. No. 26 [MBUSA's Reply In Support Of Its Motion To Dismiss], at 5:4-6 (emphasis added).

Having taken the position that "huge numbers of other variations" among the same Mercedes 722.9 transmission in different Mercedes model cars or model years should preclude class certification, MBUSA cannot now seek to prevent Plaintiffs from exploring through deposition the full breadth of the design, manufacture, and any modification of the 722.9 transmission in order to test, through cross-examination, whether this argument that MBUSA itself introduced into the record has merit.

Likewise, MBUSA's arguments on the merits also provide ample justification for Plaintiffs' deposition topics.  For example, MBUSA argued to Judge Davila that, although Plaintiffs alleged that a defective conductor plate and valve body caused the class vehicles'

---

[2]  The Court noted this position on the part of MBUSA in its Order Denying  Defendant's Motion to Dismiss, observing "MBUSA argues that Plaintiffs have not alleged facts that their transmissions failed *because of the alleged defects (instead of some other reason)*."  Dkt. No. 33, at 3:26-27 (emphasis added).

transmissions to enter so-called "Limp Mode" (where there is a lack of shifting into gear and the illumination of certain instrument cluster lights), that was not MBUSA's take at all.  Instead, MBUSA represented to the Court that such a manifestation was not evidence of a defect because *many other reasons or components of the transmission* that would not entail a defect could cause the same symptoms to manifest:

> Moreover, the manifestation of these issues—which allegedly include difficulty in shifting, not shifting into higher gears, causing the vehicle to enter into "limp mode," and an illuminated or non-illuminated "Check Engine Light"—***can occur for any number of reasons unrelated to an alleged defect, which the parties and the Court must explore*** for each Class Member.

Dkt. No. 30 [Joint Case Management Statement], at 4:3-7 (emphasis added).

Testing MBUSA's claim that transmission *components other than a defective valve body or conductor plate* can cause a vehicle to manifest the "Limp Mode" symptoms Plaintiffs complain of cannot possibly be done if Plaintiffs' deposition topics are limited solely to the valve body or conductor plate components of the transmission.  The whole point of MBUSA's argument is that the malfunction symptoms Plaintiffs allege are caused by *other* transmission features (or other causes altogether).  Yet, despite the breadth of MBUSA's own argument, MBUSA now inexplicably seeks to limit Plaintiffs' deposition topics dealing with the transmission "Limp Mode" symptom to just an inquiry about the valve body and conductor plate. *See* Table *supra* at MBUSA Proposed Topics  5-6, 14, 16.  This cannot be.  It is black-letter law that a party cannot use discovery as both a sword and a shield.  *See Ouimet v. USAA Causalty Ins. Co.*, 2004 WL 5865274, at *4 (C.D. Cal. Jul. 14, 2004), at *1 ("A party may not shield information during discovery and later use it as a sword at trial.").

MBUSA's claims of lack of relevance or undue burden fail as a matter of law given the very arguments that MBUSA has pressed before the Court[3].  Under similar circumstances, this and other courts have permitted a Rule 30(b)(6) deposition covering topics that pertain to a defense argument raised by the opposing party.  *See Adobe  Sys., Inc. v. A&S Electronics, Inc.*, 2016 WL 8201784, at *4 (N.D. Ca. June 27, 2016) (allowing Rule 30(b)(6) deposition topics that were relevant to party's defenses or potential third party liability); *see also Campbell v. Facebook, Inc.*, 310 F.R.D. 439, 449-50 (N.D.Ca. 2015)  (finding no merit to defendant's argument that it was an "impossible task" to produce a 30(b)(6) witnesses on topic seeking to identify source code for each process described in defendant's interrogatories, which included 10 and 31 sub-parts).   Moreover, MBUSA's argument that the 30(b)(6) deposition topics must be limited to just the defect identified by Plaintiffs is an argument that MBUSA has lost in prior litigation.  *See Dugas v. MBUSA, LLC*, 2014 WL 3848110, at *2 (W.D. La. Aug. 5, 2014) (denying MBUSA's protective order motion because the Rule 30(b)(6) deposition topics, which sought "[a]ll data, testing, analysis, statistical data, reporting history that was collected to assess, analyze, test and/or determine the reason(s) and/or cause(s) for the failure of the part(s) identified in the bulletin" were areas of relevant and permissible inquiry).

---

[3] So too, MBUSA's "insufficient particularity" argument fails because "the 'reasonable particularity' requirement of Rule 30(b)(6) cannot be used to limit what is asked of the designated witness at a deposition." *Louisiana Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 486 (N.D. Cal. 2012) (internal cites and quotes omitted).

Attachment 1A

| Topic | Plaintiffs' Proposed Deposition Topic | MBUSA's Proposed Deposition Topic |
|---|---|---|
| 2. | Testimony and documents concerning, MBUSA's knowledge about the design, materials and manufacturing of the 722.9 7G-Tronic automatic transmission, with a particular focus on how the functioning of the transmission as well as any differences or aspects of the design, materials, and manufacturing of the 722.9 7G-Tronic automatic transmission that MBUSA contends or intends to rely upon for contending that classwide treatment is improper in this action. | Testimony concerning, MBUSA's knowledge about the design, materials and manufacturing of the 722.9 7G-Tronic automatic transmission conductor plate and valve body and, to the extent known, changes to those parts over time, as well as the overall function and operation of the transmission and the primary components comprising the transmission and their function and operation. |
| 3. | Testimony and documents concerning MBUSA's knowledge of any bench testing, durability testing, pre-release data and testing, analysis of service and maintenance reports and trends, quality control testing, useful life testing, actual or projected failure rates, effects analyses, stress analyses, and any test or other research study proposed, commenced, or concluded relating to the 722.9 7G-Tronic automatic transmission. | Testimony concerning MBUSA's knowledge of any bench testing, durability testing, pre-release data and testing, analysis of service and maintenance reports and trends, quality control testing, useful life testing, actual or projected failure rates, effects analyses, stress analyses, and any test or other research study proposed, commenced, or concluded relating to the 722.9 7G-Tronic automatic transmission conductor plate or valve body. |
| 4. | Testimony and documents concerning any modifications or changes to the engineering designs, manufacture, installation, research, and testing of the 722.9 7G Tronic automatic transmission, with a particular focus on any such modifications or changes that MBUSA contends or intends to rely upon for arguing that classwide treatment in improper in this case. | Testimony concerning any modifications or changes to the engineering designs, manufacture, installation, research, and testing of the 722.9 7G Tronic automatic transmission conductor plate and valve body. |
| 5. | Testimony and documents relating to any lawsuits, claims, notices or customer complaints regarding the malfunction, performance, or failure of the 722.9 7G-Tronic automatic transmission. | Testimony relating to any lawsuits, claims, notices or customer complaints regarding the repair or replacement of the 722.9 7G-Tronic valve body or conductor plate (i.e., for claims of "limp mode"). |
| 6. | Testimony and documents relating to interaction by MBUSA's personnel with Daimler, AG personnel in connection with issues related to the 722.9 7G-Tronic automatic transmission. | Testimony relating to interaction by MBUSA's personnel with Daimler, AG personnel in connection with malfunction, performance, or failure of the 722.9 7G-Tronic automatic transmission valve body or conductor plate (i.e., for claims of "limp mode"). |
| 10. | Testimony and documents relating to, MBUSA's knowledge of any testing of the 722.9 7G-Tronic automatic transmission or alternative design of the 722.9 7G-Tronic automatic transmission. | Testimony relating to, MBUSA's knowledge of any testing of the 722.9 7G-Tronic automatic transmission conductor plate and valve body or alternative design of the 722.9 7G-Tronic automatic |

| | | transmission conductor plate and valve body. |
|---|---|---|
| 14. | Testimony and documents concerning any group or committee known to You to have been formed or tasked to investigate and/or resolve issues with the 722.9 7G-Tronic automatic transmission with focus on issues with the transmission conductor plate and/or valve body. | Testimony concerning any group or committee known to You to have been formed or tasked to investigate and/or resolve issues with the 722.9 7G-Tronic valve body or conductor plate (i.e., for claims of "limp mode"). |
| 15. | Testimony and documents concerning the supply and availability in the United States of 722.9 7G-Tronic transmissions and/or replacement parts for such transmissions. | Testimony concerning the supply and availability in the United States of 722.9 7G-Tronic transmission conductor plates and valve bodies. |
| 16. | Testimony and documents concerning bulletins, service bulletins, technical service bulletins (TSB), service manuals, FSE reports, QIR reports, warranty extensions, recalls, or other similar communications, notifications, correspondence or writings between Defendant and dealers, technicians, or consumers relating to the relating to the 722.9 7G-Tronic transmission with particular focus on issues with the transmission conductor plate and/or valve body. | Testimony concerning bulletins, service bulletins, technical service bulletins (TSB), service manuals, FSE reports, QIR reports, warranty extensions, recalls, or other similar communications, notifications, correspondence or writings between Defendant and dealers, technicians, or consumers relating to the relating to the repair or replacement of the 722.9 7G-Tronic valve body or conductor plate (i.e., for claims of "limp mode"). |