UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TERRY HAMM, et al.,<br>　　　　Plaintiffs,<br>　v.<br>MERCEDES-BENZ USA, LLC,<br>　　　　Defendant. | Case No. 5:16-cv-03370-EJD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFFS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT OR SUMMARY ADJUDICATION OF ISSUES**<br><br>Re: Dkt. No. 58 |

## I. INTRODUCTION

Plaintiffs Terry Hamm ("Hamm") and Bryce Meeker ("Meeker") bring various consumer protection claims predicated on allegations that Defendant Mercedes-Benz USA, LLC ("MBUSA") knew of and actively concealed defects in vehicle transmission systems. MBUSA moves for summary judgment. Plaintiffs oppose the motion and cross-move for partial summary judgment, or alternatively summary adjudication of issues. Based upon all pleadings filed to date and the comments of counsel at the hearing, MBUSA's motion is granted in part and denied in part, and Plaintiffs' cross-motion is denied.

## II. BACKGROUND

Plaintiffs are owners of Mercedes-Benz vehicles equipped with an allegedly defective automatic transmission known as the 722.9 7G-Tronic transmission. This defect typically manifests itself outside the 4 year/50,000 mile duration of MBUSA's New Vehicle Limited Warranty. Second Amended Complaint ("SAC") ¶ 1 (Dkt. No. 34). The alleged defect caused

their vehicles to enter "limp mode" in which their vehicles could not shift or accelerate. Plaintiffs allege that MBUSA knew of the defect but failed to disclose it, thereby violating the California Consumer Legal Remedies Act ("CLRA"), the California Unfair Competition Law ("UCL"), and the Kansas Consumer Protection Act ("KCPA").

Hamm purchased his used 2006 CLK350 (the "used 2006 CLK350") in December 2012 from Stevens Creek Toyota in San Jose, California. Def.'s Separate Statement of Undisputed Facts In Supp. of Mot. for Summ. J. Fact 2. At the time of Hamm's purchase, Stevens Creek Toyota was a Toyota dealership (i.e., not a Mercedes-Benz dealership). Fact. 3. Hamm is the fourth owner of the used 2006 CLK350. *Id*. Fact. 1.

Hamm's transmission failed by exhibiting the defect at issue: his vehicle locked into low gear, was unable to accelerate, and the Check Engine Light was illuminated. Decl. of Roy A. Katriel In Opp'n To Mot. For Summ. J. ("Katriel Decl.") Ex. 2 (Hamm Dep. at 132:12-135:2). Hamm paid for a replacement of the transmission's conductor plate and reprogramming of its valve body at a cost of $1,051.18. *Id*. Ex. 7 (Hamm repair invoice). Hamm seeks to represent a class of California owners and lessees of Mercedes vehicles equipped with the 722.9 transmission. SAC ¶ 1.

Meeker purchased his used 2007 Mercedes-Benz C230 (the "used 2007 C230") from his sister-in-law, Katie Leydon ("Leydon"), in 2014. *Id*. Fact. 7; Decl. of Troy M. Yoshino in Supp. Of Def.'s Mot. For Summ. J ("Yoshino Decl.") Ex. E (Meeker Dep. at 18:23-25). When Meeker visited Leydon in Chicago, Leydon told Meeker she wanted to sell the used 2007 C230. *Id*. Leydon made an offer, and Meeker accepted and drove the vehicle home to Kansas. *Id*. Meeker paid Leydon after he returned to Kansas City. Katriel Decl. Ex. 4 (Meeker Dep. at 25:10-11, 73:6-7). Meeker's transmission failed less than a year after he purchased it from Leydon. *Id*. Ex. 4 (Meeker Dep. at 48:15-23). Meeker had his transmission valve body replaced at a cost of $1,475.80. *Id*. Ex. 9. Meeker seeks to represent a class of Kansas owners and lessees of Mercedes vehicles equipped with the 722.9 transmission. SAC ¶ 1.

Case No.: 5:16-cv-03370-EJD
ORDER GRANTING IN PART AND DENYING IN PART MBUSA'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT OR SUMMARY ADJUDICATION OF ISSUES

2

1  MBUSA moves for summary judgment, contending that because Plaintiffs purchased their vehicles used from sellers other than MBUSA, neither was involved in a "transaction" with MBUSA so as to trigger MBUSA's duty to disclose any defect under California or Kansas law. MBUSA also contends that there is no evidence of reliance. MBUSA separately contends that Plaintiff Meeker cannot invoke the KCPA because he purchased his vehicle in Illinois, not Kansas.

Plaintiffs seek partial summary judgment as to liability, asserting that the record shows an absence of dispute as to the material facts underlying each of Plaintiffs' claims. Alternatively, in the event that the Court were to conclude that there are material facts as to any elements of Plaintiffs' claims, Plaintiffs seek summary adjudication as follows: the existence of a defect to the 722.9 transmission; MBUSA's failure to disclose the defect; MBUSA's knowledge of the defect prior to the original sale of Plaintiffs' vehicles or, at least in the case of Meeker's KCPA claim, prior to Meeker's purchase of his car; MBUSA's duty to disclose the defect under both California and Kansas law; and Plaintiffs' resulting harm from MBUSA's failure to disclose the defect. Pls.' Mot. For Partial Summ. J. 7. MBUSA contends that Plaintiffs' motion is procedurally improper because it violates the one-way intervention rule and also fails on the merits.

## III. STANDARDS

A motion for summary judgment or partial summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). The moving party bears the initial burden of informing the court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the issue is one on which the nonmoving party must bear the burden of proof at trial, the moving party need only point out an absence of evidence supporting the claim; it does not need to disprove its opponent's claim. *Id.* at 325.

Case No.: 5:16-cv-03370-EJD
ORDER GRANTING IN PART AND DENYING IN PART MBUSA'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT OR SUMMARY ADJUDICATION OF ISSUES

3

If the moving party meets the initial burden, the burden then shifts to the non-moving party to go beyond the pleadings and designate specific materials in the record to show that there is a genuinely disputed fact. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 324. A "genuine issue" for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, the mere suggestion that facts are in controversy, as well as conclusory or speculative testimony in affidavits and moving papers, is not sufficient to defeat summary judgment. *Id*. ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."); *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Instead, the non-moving party must come forward with admissible evidence to satisfy the burden. Fed. R. Civ. P. 56(c).

"If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000). "But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." *Id*.

**IV. DISCUSSION**

    **A. Hamm's CLRA And UCL Claims: Duty to Disclose**

The CLRA prohibits deceptive acts and practices "undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a); *see also Arroyo v. TP-Link USA Corp.*, No. 14-4999 EJD, 2015 WL 5698752, at * 8 (N.D. Cal. Sept. 29, 2015) (quoting Cal. Civ. Code § 1770(a)). Hamm's SAC alleges that MBUSA violated section 1770(a)(5) "by representing that its goods or services

Case No.: 5:16-cv-03370-EJD
ORDER GRANTING IN PART AND DENYING IN PART MBUSA'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT OR SUMMARY ADJUDICATION OF ISSUES

4

have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have"; 1770(a)(7) "by representing that its goods or services are of a particular standard, quality, or grade, if they are of another"; 1770(a)(9) "by advertising goods and services with the intent not to sell them as advertised"; 1770(a)(14) "by representing that its subscription service confers or involves rights, remedies, or obligations which it does not have or involve"; and 1770(a)(16) by representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not. SAC ¶ 31.

The UCL prohibits business practices that are (1) unlawful, (2) unfair, or (3) fraudulent. Cal. Bus. & Prof. Code § 17200. The SAC alleges that MBUSA's actions were unlawful in that they violated the CLRA. SAC ¶ 38. The SAC also alleges that MBUSA's marketing and sale of the subject vehicles without disclosing the alleged defect when MBUSA knew of the defect amounts to a deceptive business practice. *Id.* ¶ 39. The SAC further alleges that MBUSA intentionally concealed its knowledge of the defect. *Id*. Although the SAC alleges affirmative misrepresentations and omissions, the parties' respective briefs treat Hamm's claims as entirely omissions-based claims.

Omissions may give rise to liability under both the CLRA and UCL. *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018). "[T]to be actionable the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835 (2006); *see also Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012) (same); *Beyer v. Symantec Corp.*, 333 F. Supp. 3d 966, 978 (N.D. Cal. 2018). "California federal courts have generally interpreted *Daugherty* as holding that '[a] manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation or a safety issue.'" *Wilson*, 668 F.3d at 1141 (collecting cases). More specifically, "[a] manufacturer has a duty to disclose a defect that poses an unreasonable safety risk." *Seifi v. Mercedes-Benz USA, LLC*, No. 12-5493-TEH, 2013 WL 2285339, at *7 (N.D. Cal. May 23, 2013). Here, Hamm's theory of liability

against MBUSA is straightforward: MBUSA, as the manufacturer, had a duty to disclose the alleged defect in their used vehicles' transmission systems because the alleged defect poses an unreasonable safety risk. The issue raised by MBUSA's motion, however, is not as straightforward: to whom this duty of disclosure is owed.

MBUSA contend that it does not owe a duty to disclose to Hamm because there was no "relationship" between MBUSA and Hamm to trigger such a duty. *See LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337 (1997) (stating that failure to disclose material facts known to one party and not to the other is not actionable fraud unless there is some relationship between the parties which gives rise to a duty to disclose such known facts, and that "[a]s a matter of common sense, such a relationship can only come into being as a result of some sort of *transaction* between the parties") (original emphasis)); *see also Deteresa v. Am. Broad Cos.*, 121 F.3d 460, 467 (9th Cir. 1997) (stating that for a fraud claim where duty to disclose is based on defendant's "exclusive knowledge" there must be proof of a "relationship between the plaintiff and defendant in which a duty to disclose can arise" (quoting *LiMandri*, 52 Cal. App. 4th at 336-37)); *Cirulli v. Hyundai Motor Co.*, No. 08-854 AG, 2009 WL 4288367, at *4 (C.D. Cal. Nov. 9, 2009) ("Since there is no [ ] transaction with HMC, Plaintiffs' CLRA claim against it fails. And since 'the UCL claim is based on the CLRA claim,' the UCL claim also fails."); *Green v. Canidae Corp.*, No. 09-486 GAF, 2009 WL 9421226, at *4 (C.D. Cal. June 9, 2009) (dismissing CLRA claim because "the manufacturer never transacted business or intended to transact business with the consumer"). MBUSA emphasizes that Hamm did not purchase his vehicle directly from MBUSA or from an authorized Mercedes-Benz dealership. Moreover, MBUSA contends that the law does not impose a duty to do the impossible. MBUSA reasons that MBUSA had no ability to make disclosures to Hamm because he (1) is the fourth owner of his vehicle; (2) bought it after it was marketed and sold by MBUSA; (3) bought it from a Toyota dealership; and (4) never looked at any vehicle brochures, marketing materials or other publications by MBUSA.

In response, Hamm contends that the nature of the alleged defect imposed a duty to

Case No.: 5:16-cv-03370-EJD
ORDER GRANTING IN PART AND DENYING IN PART MBUSA'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT OR SUMMARY ADJUDICATION OF ISSUES

6

disclose, regardless of the lack of any relationship between Hamm and MBUSA. Pls.' Opp. to Def.'s Mot. For Summ. J. And Cross-Mot. For Partial Summ. J. or Summ. Adjudication 1-2 (Dkt. No. 71). Hamm reasons that "if he proves a defect known to MBUSA that either poses a safety risk or that goes to an essential function of the car, then California holds that MBUSA has a duty to disclose the defect," citing *Daugherty v. American Honda Motor Co.*, 144 Cal. App. 4th 824, 836 (2006) and *Rutledge v. Hewlett-Packard Co.*, 238 Cal. App. 4th 1164, 1179 (2015). *Id.*

### 1. Duty to Disclose Unreasonable Safety Risk

This court concludes that under California law, a manufacturer has a duty to disclose a defect that poses an unreasonable safety risk even if that manufacturer did not have a transactional relationship with the vehicle owner. In *Daugherty*, most of the plaintiffs had purchased used vehicles that allegedly had defective engines. *Id.* at 828. The *Daugherty* court affirmed dismissal of all of the plaintiffs' claims. The *Daugherty* court affirmed dismissal of the CLRA claim because the complaint did not identify any omission that was contrary to representation made by a defendant and all of the plaintiffs' vehicles functioned as represented throughout their warranty periods. *Id.* at 835 ("no representation is alleged relating to the F22 engine, which functioned as warranted. Accordingly, no claim has been stated."). The plaintiff argued that defendant had knowledge of an "unreasonable risk" that it had a duty to disclose. *Id.* at 836. The *Daugherty* court rejected the argument because the only "unreasonable risk" alleged was the risk of damages, namely the cost of repairs, not physical injuries. *Id.* The *Daugherty* court also noted that the only reference to "safety" in the complaint was in the paragraph claiming punitive damages and that paragraph merely asserted a legal conclusion. These references to "unreasonable risk" and "safety" suggest that the *Daugherty* court recognized the potential duty of a manufacturer to disclose a defect that poses a safety risk to vehicle owners with whom the manufacturer has no transactional relationship. *See also Ehrlich v. BMW of North America, LLC*, 801 F. Supp. 2d 908, 918 (C.D. Cal. 2010) (holding that even though express warranty had expired, plaintiff had sufficiently alleged UCL and CLRA claim on the theory that manufacturer had a duty to disclose

Case No.: 5:16-cv-03370-EJD
ORDER GRANTING IN PART AND DENYING IN PART MBUSA'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT OR SUMMARY ADJUDICATION OF ISSUES

7

defective windshields that created an unreasonable safety risk that would be material to reasonable consumer).

That Hamm and MBUSA did not have a transactional relationship is not fatal to Hamm's claim. In *Seifi*, the plaintiffs purchased used vehicles which they alleged had defective balance shaft gears. In addressing the CLRA claim in the context of a motion to dismiss, the *Seifi* court stated:

> MBUSA also argues that Seifi and Deakin have not established standing to bring suit under the CLRA because their vehicles were not purchased directly from MBUSA. However, "a cause of action under the CLRA may be established independent of any contractual relationship between the parties." *McAdams*, 182 Cal. App. 4th at 186, 105 Cal. Rptr. 3d 704; *see also* Cal. Civil Code § 1780(a). For this reason, plaintiffs who purchased used cars, or who purchased cars from dealerships rather than directly from the manufacturer have standing to bring CLRA claims against manufacturers, even though they never entered into transactions directly with the manufacturers. *See Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138, 1144 (N.D. Cal. 2005). The fact that Seifi and Deakin never entered into transactions with MBUSA has no impact on their standing to bring claims under the CLRA.

*Id*. In *Chamberlan*, the court denied defendant's motion for summary judgment on the plaintiffs' CLRA claim, stating in pertinent part:

> Defendant has also shown no grounds for the Court to reconsider the conclusions in its previous order, namely that pure omissions are actionable under the CLRA and that Plaintiffs who purchased used cars have standing to bring CLRA claims, despite the fact that they never entered into a transaction directly with Defendant.

*Chamberlan*, 369 F. Supp. 2d at 1144.

MBUSA counters that in each of the used vehicles cases relied upon by Hamm, *Seifi* and *Chamberlan*, the manufacturer had some relationship with the plaintiffs because the vehicle was purchased from an authorized dealership or had been at some point covered by an express warranty. *See Seifi*, 2013 WL 2285339 at * 3 ("It is undisputed that the vehicles at issue in this case were covered by MBUSA's factory warranty[.]"); *Green v. Canidae Corp.*, No. 09-486 GAF,

Case No.: 5:16-cv-03370-EJD
ORDER GRANTING IN PART AND DENYING IN PART MBUSA'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT OR SUMMARY ADJUDICATION OF ISSUES

8

2009 WL 9421226, at *4 (C.D. Cal. June 9, 2009) ("[T]he *Chamberlan* case is distinguishable in that the used car dealers were authorized dealerships acting as agents of Ford."). Hamm disputes MBUSA's assertion, citing to the underlying record in each case; however, Hamm's record citations are not necessarily inconsistent with MBUSA's position. In *Seifi*, the complaint alleged that Mr. Seifi purchased his car third hand and not from an MBUSA factory-authorized dealer. Katriel Reply Decl. Ex. 3 at 18:28-19:1 (Dkt. No. 73-4). Left unanswered is whether Mr. Seifi's car was covered by a factory warranty, even though he purchased it third hand. In *Chamberlan*, defendant manufacturer, Ford, opposed class certification, asserting that the proposed class representatives purchased their vehicles used and "not from Ford." Katriel Reply Decl. Ex. 4 at 27:12-14 (Dkt. No. 73-5). Ford's representation, however, does not necessarily mean that the named plaintiffs did not purchase their vehicles from an authorized dealership acting as an agent of Ford. Putting aside these discrepancies, what is clear is that under *Seifi* and *Chamberlan*, a transactional relationship is not required for a plaintiff to assert UCL and CLRA claims against a manufacturer. Moreover, other cases cited by Hamm hold that a downstream purchaser such as Hamm may assert a claim for failure to disclose an unreasonable safety risk against a car manufacturer. *See Johnson v. Nissan North Am., Inc.*, 272 F. Supp. 3d 1168, 1183 (N.D. Cal. 2017) (upholding CLRA claim against Nissan even though plaintiff purchased vehicle from CarMax, a third-party reseller); *see also Reniger v. Hyundai Motor America*, 122 F. Supp. 3d 888 (N.D. Cal. 2015) ("a duty to disclose may also arise when a defendant possesses or exerts control over material facts not readily available to the plaintiff[,]" at least when those material facts concern allegedly concealed safety risks known only to the manufacturer) (citing *Jones v. ConocoPhillips*, 198 Cal. App. 4th 1187, 1198-99 (Cal. Ct. App. 2011)).

**2. Duty to Disclose Under *Rutledge***

Hamm contends that *Rutledge* imposes a separate duty to disclose on MBUSA that is independent of any unreasonable safety risk. Because the court finds that MBUSA had a duty to disclose an unreasonable safety risk, it is unnecessary for the court to consider Plaintiffs' duty to

Case No.: 5:16-cv-03370-EJD
ORDER GRANTING IN PART AND DENYING IN PART MBUSA'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT OR SUMMARY ADJUDICATION OF ISSUES
9

disclose theory under *Rutledge* for purposes of deciding MBUSA's motion for summary judgment.

### 3. Reliance

MBUSA next contends that the CLRA and UCL claims fail because Hamm cannot establish reliance. In response, Hamm contends that he is not required to show reliance. Hamm draws a distinction between a duty to disclose claim based upon a "partial representation" theory, where a plaintiff must show reliance, and a claim based upon nondisclosure of a material fact, such as a safety issue as alleged in the present case. Hamm contends that reliance is required for the first type of claim, but not for the second, citing *Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088, 1095 (N.D. Cal. 2007)). Hamm's reading of *Falk* is inaccurate. In *Falk*, GM truck owners alleged that GM had a duty to disclose that their trucks' speedometers were defective. The *Falk* court held that plaintiffs had adequately stated a claim of fraud by omission, and in doing so specifically addressed "the justifiable reliance element of the fraud by omission claim." Thus, contrary to Hamm's assertion, *Falk* confirms that a plaintiff must establish reliance to prevail on a fraud by omission claim. *Id*. at 1099. The *Falk* court concluded that the reliance element was easily satisfied by plaintiffs' allegation that a "reasonable customer" would not have paid the asking price had it been disclosed that the speedometer was defective. *Id*.

More importantly, "[t]he California Supreme Court has held that, where the unfair competition or false advertising underlying a plaintiff's claim consists of a defendant's misrepresentation or omission, the UCL. . . require[s] a plaintiff to establish actual reliance on the alleged misrepresentation or omission to establish statutory standing." *Phillips v. Apple Inc.*, No. 15-4879 LHK, 2016 WL 1579693, at *5 (N.D. Cal. Apr. 19, 2016) (citing *In re Tobacco II Cases*, 46 Cal. 4th 298, 314, 326 (2009)). Actual reliance may be established by evidence that "had the omitted information been disclosed one would have been aware of it and behaved differently." *See id*. (quoting *Mirkin v. Wasserman*, 5 Cal 4th 1082, 1093 (1993)).

The Ninth Circuit's decision in *Daniel v. Ford Motor Co.*, 806 F.3d 1217 (9th Cir. 2015) is

Case No.: 5:16-cv-03370-EJD
ORDER GRANTING IN PART AND DENYING IN PART MBUSA'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT OR SUMMARY ADJUDICATION OF ISSUES

10

instructive.  In *Daniel*, the plaintiffs brought a class action against Ford, alleging that Ford breached implied and express warranties and committed fraud in the sale of Ford Focus vehicles containing rear suspension defects.  *Id*. 1220.  The plaintiffs, who had purchased their Ford Focus vehicles from authorized Ford dealerships, alleged that the defect led to premature tire wear, which in turn led to safety hazards.  *Id*.  The plaintiffs alleged that Ford had a duty to disclose the defect but failed to do so.  *Id*.  In addressing the CLRA and UCL claims, the Ninth Circuit made clear that actual reliance is "an essential element for a fraudulent omission claim."  *Id*. at 1225.  The Ninth Circuit instructed that "[t]o prove reliance on an omission, a plaintiff must show that the defendant's nondisclosure was an immediate cause of the plaintiff's injury-producing conduct."  *Id*.  Further, the Ninth Circuit stated that "[a] plaintiff need not prove that the omission was the only cause or even the predominant cause, only that it was a substantial factor in his decision."  *Id*. citing *In re Tobacco II Cases*, 46 Cal. 4th at 309.  Particularly germane to this case is the Ninth Circuit's instruction that a plaintiff may show that the omission was a substantial factor "by simply proving 'that, had the omitted information been disclosed, one would have been aware of it and behaved differently.'"  *Id*. (quoting *Mirkin v. Wasserman*, 5 Cal.4th 1082 (1993)).  Thus, there are two "sub-elements" that must be satisfied to establish reliance:  (1) that had the omitted information been disclosed, one would have been aware of it; and (2) behaved differently.  *Id*. at 1225-6.  "That one would have behaved differently can be presumed, or at least inferred, when the omission is material."  *Id*. at 1225.

Here, MBUSA's argument is essentially that Hamm cannot satisfy the first of the two sub-elements of reliance, namely that had MBUSA disclosed the alleged defect, Hamm would have been aware of it.  MBUSA's position is well supported.  Hamm purchased his vehicle fourth-hand from a Toyota dealership.   Hamm never reviewed any sales brochures or advertising materials, or any other materials published by MBUSA, regarding the 7-year-old used 2006 CLK350 prior to or at the time of sale.  Yoshino Decl. Ex. B at 58:18-59:24, 63:19-64:12, 66:19-67:6 (Hamm Dep.).  He never talked to anyone from MBUSA (or from a Mercedes-Benz dealership) about his

Case No.: 5:16-cv-03370-EJD
ORDER GRANTING IN PART AND DENYING IN PART MBUSA'S MOTION FOR SUMMARY JUDGMENT;  DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT OR SUMMARY ADJUDICATION OF ISSUES

11

prospective purchase. *Id.* at 35:15-22, 59:25-60:8 (Hamm Dep.). A reasonable jury could find based on these facts that even if MBUSA had disclosed the alleged defect, Hamm would not have been aware of it, and therefore MBUSA is not liable for the alleged CLRA and UCL violations. *See Hindsman v. GM LLC*, No. 17-5337 JSC, 2018 WL 2463113, at *13 (N.D. Cal. June 1, 2018) (dismissing plaintiffs' CLRA and UCL omission claims because "[t]hey have not pleaded that they reviewed any advertising materials before purchasing their Vehicles; nor have they alleged that they have specific interactions with GM before purchasing their Vehicles, as did the *Daniels* plaintiffs. They have not even alleged that they purchased their Vehicles from GM dealerships.").

Hamm, however, has presented evidence from which a reasonable jury could infer that he would have been aware of the alleged defect. When Hamm saw the 2006 CLK350 on the Toyota dealership lot, he used his cell phone to search for information on various websites, including Cars.com, Edmunds "and the usual suspects." Katriel Decl. Ex. 2 at 51:15-21 (Dkt. No. 71-3). Hamm also looked at a couple of magazines and may have looked at Car & Driver and others. *Id.* at 53:2-7. In addition, the dealership provided Hamm with information about the vehicle. *Id.* at 54:14-16. In sum, a genuine issue of material facts precludes summary judgment on Hamm's claims.

### B. Meeker's KCPA Claim

MBUSA contends that Meeker's KCPA claim fails because, among other things, he cannot show the existence of a Kansas consumer transaction. The court agrees.

The KCPA provides that "[n]o supplier shall engage in any deceptive act or practice in connection with a consumer transaction." K.S.A. § 50-626(a) (emphasis added). A "consumer transaction" is defined as a "sale, lease, assignment or other disposition for value of property or services within this state . . . to a consumer; or a solicitation by a supplier with respect to any of these dispositions." *Id.* § 50-624(c).

Here, Meeker's transaction did not take place "within" the state of Kansas. Meeker testified that when he was in Chicago, Leydon "made an offer, I accepted and I drove the vehicle

home." Yoshino Decl. Ex. E (Meeker Dep. at 19:22-23); *see also id.* at 24:4. Prior to Meeker leaving Chicago to return home to Kansas, Leydon gave Meeker the used 2007 C230, its title, and all of its keys. Yoshino Decl. Ex. E (Meeker Dep. at 19:15-20:1; 25:17-21;72:2-73:4). As a matter of law, title to the used 2007 C230 passed to Meeker in Illinois when Leydon tendered the vehicle to him there. *See* 810 ILCS 5/2-401 ("Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods[.]"); *see also* K.S.A. § 84-2-401(2) (same); *Freer v. Beetler*, 368 B.R. 720, 727 (Bankr. C.D. Ill. 2007) ("[B]y operation of Section 2-401, title to the Tractor passed to MR. BEETLER when he took possession of it."); *Werdann v. Mel Hambelton Ford, Inc*., 32 Kan. App. 2d 118, 125 (2003) ("Under the UCC, the legal title to Windstar 25369 passed to Werdann on the date the van was delivered. . . .").

Meeker does not challenge the general principle that title passes when delivery is made, but argues that "no contract of sale was made and no consideration given until after Meeker and the car were in Kansas." Pls.' Opp. To Def.'s Mot. For Summ. J. 13. Meeker analogizes his exchange with Leydon in Chicago as that of a driver "delivering" a car to a valet, and argues that the exchange did not result in a transfer of title. *Id*. Further, Meeker contends that "no agreement to sell the car was even negotiated until Meeker was in Kansas. That agreement, along with Meeker's payment made from Kansas pursuant to the agreement, encompassed the transaction." *Id*. Meeker emphasizes that he did not execute a bill of sale or pay for the vehicle until after he returned to Kansas. Decl. of Roy A. Katriel In Support of Pls.' Mot. For Summ. J. Ex. 4 (Meeker Dep. at 19-26:12, 72:25-73:7). Meeker also asserts that he "did not feel he had an agreement to buy the car while he was in Illinois." Pls.' Opp. To Def.'s Mot. For Summ. J. 13. Meeker testified at his deposition as follows:

> Q. All right. But your -- your understanding at the time, though, is when you were driving back from Chicago, it was your vehicle?
>
> A. Not at the time. I had yet to purchase it.

Case No.: 5:16-cv-03370-EJD
ORDER GRANTING IN PART AND DENYING IN PART MBUSA'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT OR SUMMARY ADJUDICATION OF ISSUES

13

> Q. Okay. But it was -- it was your understanding that -- that you were going to purchase it?
>
> A. It was my understanding the purchase was -- yes –
>
> Q. Okay.
>
> A. --intending to purchase it. But, you know, if I -- if there's something wrong on the drive home, I think there would have been a discussion, you know. It hadn't been done yet.

*Id.*, at 26:7-22. Meeker's subjective understanding is inconsistent with Leydon giving Meeker possession of the vehicle, keys, and title and Leydon permitting Meeker to drive the vehicle hundreds of miles away from Chicago. There is also no evidence that Meeker ever communicated his subjective understanding to Leydon. The transaction occurred in Illinois. K.S.A. § 84-2-401(2); *Werdann*, 32 Kan. App. 2d at 125; 810 ILCS 5/2-401; *see also In reHause*, 224 B.R. 673, 679 (C.D. Il.. Bankr. 1998) (holding that title to purchased cattle transferred even though payment had not been made).

Because Meeker did not engage in a transaction within Kansas, his KCPA claim fails. *See e.g. Shepard v. DineEquity, Inc.*, No. 08-2414 KHV, 2009 WL 8518288, at *10 (D. Kan. Sep. 25, 2009) "[W]hen a consumer transaction occurs outside Kansas, the KCPA does not provide a . . . basis for liability[.]"; *Kluin v. Am. Suzuki Motor Corp.*, 56 P.3d 829, 839 (Kan. 2002) ("Kluin purchased the motorcycle . . . in Oklahoma. . . . The KCPA does not apply."); *Whitton v. Deffenbaugh Indus., Inc.*, 2014 U.S. Dist. LEXIS 79418, at *16 (D. Kan. June 10, 2014) (finding no "consumer transaction" under the KCPA where services were rendered in Missouri and payments collected in Kansas); *Meyers v. Garmin Int'l, Inc.*, No. 13-2416 CM, 2016 WL 1261034, at *4 (D. Kan. Mar. 30, 2016) (summary judgment granted as to KCPA claim where "Plaintiff's purchase of his NÜVI 2460 was not a consumer transaction within the state of Kansas").

### C. Plaintiffs' Motion Violates The One-Way Intervention Rule

MBUSA contends that Plaintiffs' cross-motion violates the one-way intervention rule because it seeks to establish liability before class certification. Plaintiffs counter that there is no

Case No.: 5:16-cv-03370-EJD
ORDER GRANTING IN PART AND DENYING IN PART MBUSA'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT OR SUMMARY ADJUDICATION OF ISSUES
14

one-way intervention bar because MBUSA opted to move for summary judgment before class certification, citing this court's decision in *Villa v. San Francisco Fort-Niners, Ltd.*, 104 F. Supp. 3d 1017, 1022 (N.D. Cal. 2015). Plaintiffs' reliance on *Villa* is misplaced. In *Villa*, this court held that the one-way intervention rule applied and denied the plaintiffs' motion for partial summary judgment as to liability. *Id*. at 1021. This court reasoned that:

> [d]efendants face the exact one-sided risk that prompted changing [Rule 23]. [citations omitted]. The Court has not yet ruled whether to certify Plaintiff's proposed class under Fed. R. Civ. P. 23. *See* Dkt. No. 88. Therefore, Plaintiff's motion for partial summary judgment, if unsuccessful, would not prevent putative class members from filing their own suits with hope for a more favorable ruling. This is the very "one-way intervention" problem warned of in the cases cited *supra*. Accordingly, the one-way intervention rule applies and Plaintiff's motion must be denied.

*Id*. The present case is in the same posture as *Villa*: the court has not yet ruled on class certification. Nevertheless, Plaintiffs argue that the court should proceed with Plaintiffs' motion because "[t]he rationale for a one-way intervention rule] disappears when the defendant himself moves for summary judgment before a decision on class certification." *Id*. Plaintiffs have plucked this sentence from *Villla* out of context. In *Villa* this court explained immediately after the quoted sentence that "[i]n such a situation, ... only the slender reed of stare decisis stands between [the defendant] and the prospective onrush of litigants." *Id*. (quoting *Schwarzschild v. Tse*, 69 F.3d 293, 295 (9th Cir. 1995)). In other words, when a defendant proceeds with a motion for summary judgment, the defendant proceeds at its peril, knowing that it may, in the absence of class certification, face the onrush of litigants who will not be bound by the summary judgment ruling. Therefore, the rationale for a one-way intervention rule disappears when the defendant moves for summary judgment before class certification. When read in context, the stand-alone sentence from *Villa* relied on by Plaintiffs does not support their argument.

## V. CONCLUSION

For the reasons set forth above, MBUSA's motion for summary judgment is GRANTED

Case No.: 5:16-cv-03370-EJD
ORDER GRANTING IN PART AND DENYING IN PART MBUSA'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT OR SUMMARY ADJUDICATION OF ISSUES

15

as to Meeker's KCPA claim and DENIED in all other respects.  Plaintiffs' motion for partial summary judgment or summary adjudication of issues is DENIED.  Pursuant to the court's order dated February 22, 2019, no later than ten days after entry of this Order, the parties shall jointly file a proposed schedule for class certification briefing and a proposed hearing date.

**IT IS SO ORDERED.**

Dated:  September 30, 2019

EDWARD J. DAVILA
United States District Judge

Case No.: 5:16-cv-03370-EJD
ORDER GRANTING IN PART AND DENYING IN PART MBUSA'S MOTION FOR SUMMARY JUDGMENT;  DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT OR SUMMARY ADJUDICATION OF ISSUES
16