UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

|  |  |
|---|---|
| TERRY HAMM, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MERCEDES-BENZ USA, LLC,<br><br>Defendant. | Case No.  5:16-cv-03370-EJD<br><br>**ORDER DENYING MOTION FOR CLASS CERTIFICATION; DENYING MBUSA'S MOTION TO STRIKE EXPERT REPORT OF D.C. SHARP AND MOTION TO STRIKE EXPERT REPORT OF MURAT OKCUOGLU; DEEMING MOOT PLAINTIFF'S MOTION TO STRIKE EXPERT REPORT AND TESTIMONY OF KEVIN LANE KELLER**<br><br>Re: Dkt. Nos. 99, 101, 102, 111 |

Before the Court are the following motions: (1) Plaintiff Terry Hamm's ("Hamm" or "Plaintiff") motion for class certification ("Motion"); (2) Defendant Mercedes-Benz USA, LLC's ("MBUSA" or "Defendant") motion to strike the report of Plaintiff's expert Dr. D.C. Sharp pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*; (3) MBUSA's motion to strike the report of Plaintiff's expert Murat Okcuoglu also pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*; and (4) Plaintiff's motion to strike the expert report and testimony of MBUSA's expert, Kevin Lane Keller. *See* Dkt Nos. 99, 101, 102, 111, respectively. The Court took the motions under

United States District Court
Northern District of California

United States District Court
Northern District of California

submission for decision without oral argument pursuant to Civil Local Rule 7-1(b). For the reasons below, the Court DENIES Plaintiff Hamm's Motion, DENIES Defendant MBUSA's motion to strike the report of Plaintiff's expert Dr. D.C. Sharp and motion to strike the report of Plaintiff's expert Murat Okcuoglu, and DEEMS MOOT Plaintiff's motion to strike the report and testimony of Kevin Lane Keller.

## I.     Background

### A. Factual Background

Plaintiff Terry Hamm is an owner of a Mercedes-Benz vehicle equipped with an allegedly defective automatic transmission known as the 722.9 7G-Tronic transmission. Second Amended Complaint ("SAC") ¶ 1, Dkt. No. 34. Hamm purchased his used Mercedes-Benz 2006 CLK350 vehicle in December 2012 from Stevens Creek Toyota in San Jose, California. Def.'s Separate Statement of Undisputed Facts In Supp. of Mot. for Summ. J. Fact 2. At the time of Hamm's purchase, Stevens Creek Toyota was a Toyota dealership (i.e., not a Mercedes-Benz dealership). *Id*. Fact 3. Hamm is the fourth owner of the used Mercedes-Benz 2006 CLK350 vehicle. *Id*. Fact. 1.

The alleged transmission defect typically manifests itself outside the 4 year/50,000 mile duration of MBUSA's New Vehicle Limited Warranty. SAC ¶ 1. The alleged defect causes Mercedes-Benz vehicles with the 722.9 transmission to enter "limp mode" in which their vehicles cannot shift or accelerate. *Id*. Hamm's transmission failed by exhibiting the defect at issue: his vehicle locked into low gear, was unable to accelerate, and the Check Engine Light was illuminated. Decl. of Roy A. Katriel In Opp'n To Mot. For Summ. J. ("Katriel Decl.") Ex. 2 (Hamm Dep. at 132:12-135:2). Hamm paid for a replacement of the transmission's conductor plate and reprogramming of its valve body at a cost of $1,051.18. *Id*. Ex. 7 (Hamm repair invoice).

Hamm points to warranty claims relating to the 722.9 transmissions as well as MBUSA's "repair kits," remedying issues affecting various 722.9 transmissions, as evidence of the alleged

CASE NO.: 5:16-CV-03370-EJD
ORDER DENYING MOTION FOR CLASS CERTIFICATION; DENYING MBUSA'S
MOTION TO STRIKE EXPERT REPORT OF D.C. SHARP AND MOTION TO STRIKE
EXPERT REPORT OF MURAT OKCUOGLU; DEEMING MOOT PLAINTIFF'S MOTION TO
STRIKE EXPERT REPORT AND TESTIMONY OF KEVIN LANE KELLER

1  defect. Motion at 2–3. Hamm alleges that MBUSA knew of the defect but failed to disclose it,

2  thereby violating the California Consumer Legal Remedies Act ("CLRA") and the California

3  Unfair Competition Law ("UCL"). *Id*. ¶¶ 33–35, 37–39. Hamm seeks to represent a class of

4  California owners and lessees of Mercedes vehicles equipped with the 722.9 transmission, seeking

5  damages under the theory that all California purchasers of the class vehicles paid more for their

6  car, that had an undisclosed defect, than they would have paid had the defect not been present or

7  been disclosed prior to the vehicles' sale. SAC ¶¶ 1, 45.

8  **B. Proposed Classes**

9  Plaintiff Hamm seeks to certify the following class:

10          All California owners and lessees of Mercedes-Benz vehicles
           equipped with the 722.9 7G Tronic transmission. Excluded from this
11          Class definition are all employees, officers, or agents of Defendant
           Mercedes-Benz USA, LLC ("MBUSA"). Also excluded from this
12          Class definition are all judicial officers assigned to this case as well
           as their staff and immediate families.
13

14  Motion at 1. In the alternative, Plaintiff Hamm seeks the certification of a narrower class defined

15  as:

16          All California owners and lessees of Mercedes-Benz vehicles
           equipped with the VGS1 generation of the 722.9 7G Tronic
17          transmission (which were equipped on the 2004-2007 Mercedes
           model year vehicles outfitted with the 722.9 7G Tronic transmission).
18          Excluded from this Class definition are all employees, officers, or
           agents of MBUSA. Also excluded from this Class definition are all
19          judicial officers assigned to this case as well as their staff and
           immediate families."[1]
20

21

22  _____

23  [1] There exists a factual dispute as to which iteration of the 722.9 transmission is outfitted on
    Hamm's Mercedes-Benz 2006 CLK350 vehicle. Hamm maintains that his vehicle is equipped
    with the VGS1 iteration of the 722.9 transmission. Motion at 8. In contrast, MBUSA contends that
24  Hamm's vehicle is actually outfitted with the VGS2 iteration of the 722.9 transmission. Resp. at
    15. To the extent that Hamm's vehicle is not equipped with the VGS1 iteration of the 722.9
25  transmission, there cannot be a VGS1 subclass represented by Hamm. *See Sali v. Corona Reg'l
    Med. Ctr.*, 909 F.3d 996, 1007 (9th Cir. 2018) ("A named plaintiff must be a member of the class
26  she seeks to represent.").
    CASE NO.: 5:16-CV-03370-EJD
27  ORDER DENYING MOTION FOR CLASS CERTIFICATION; DENYING MBUSA'S
    MOTION TO STRIKE EXPERT REPORT OF D.C. SHARP AND MOTION TO STRIKE
28  EXPERT REPORT OF MURAT OKCUOGLU; DEEMING MOOT PLAINTIFF'S MOTION TO
    STRIKE EXPERT REPORT AND TESTIMONY OF KEVIN LANE KELLER

United States District Court
Northern District of California

*Id.*

As Hamm provides in his Motion, "[e]xcluded from both definitions are all persons who claim personal injuries resulting from the defect alleged in this action. Both definitions also are limited to natural persons." *Id.*

## II. Discussion

The Court begins with analyzing the requirements for class certification under Rule 23(a). Afterwards, the Court examines class certification requirements under Rule 23(b)(3). Ultimately, because the Court finds that Hamm will be unable to show that predominance exists under Rule 23(b)(3), Hamm is also unable to meet all of the requirements of Rule 23(a), namely typicality, for the same reasons that defeat predominance under Rule 23(b)(3). Finally, the Court turns its attention to three Daubert motions, two from MBUSA to strike the reports of Plaintiff's experts D.C. Sharp and Murat Okcuoglu, and one from Plaintiff Hamm to strike MBUSA's expert report of Kevin Keller.

### A. Motion for Class Certification

A motion for a class action may be certified under Rule 23 of the Federal Rules of Civil Procedure if all of the requirements of Rule 23(a) are met and plaintiffs demonstrate that one requirement under Rule 23(b) is also satisfied. Rule 23(a) requires that a plaintiff seeking to assert claims on behalf of a class demonstrate: 1) numerosity; 2) commonality; (3) typicality; and (4) fair and adequate representation of the interests of the class; and 5) ascertainability. Fed. R. Civ. P. 23(a); *see also In re Yahoo Mail Litig.*, 308 F.R.D. 577, 596 (N.D. Cal. 2015) ("[A]part from the explicit requirements of Rule 23(a), the party seeking class certification must demonstrate that an identifiable and ascertainable class exists." (quotation omitted)). Rule 23(b)(3) allows a class action to be maintained where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the

controversy." Fed. R. Civ. P. 23(b)(3). "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, classwide proof.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1045, 194 L.Ed.2d 124 (2016) (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196–197 (5th ed. 2012) (internal quotation marks omitted)).

### i.   Rule 23(a)

#### 1.   Numerosity

Rule 23(a)(1) requires that the size of the proposed class be "so numerous that joinder of all the class members is impracticable." Fed. R. Civ. P. 23(a)(1). In general, Hamm alleges that the putative class suffered an injury at the point of purchasing certain MBUSA vehicles due to MBUSA's nondisclosure of a transmission defect. Motion at 4. Plaintiff asserts that numerosity is met here as "tens of thousands of Mercedes vehicles equipped with the 722.9 transmission were sold in California." *Id* at 6. Further, as Plaintiff additionally points out, the number of MBUSA vehicles with allegedly defective transmissions would still number in the thousands under either of Plaintiff's two proffered class definitions. *Id*.

MBUSA does not dispute Plaintiff's contention as to the quantity of MBUSA vehicles sold in California with 722.9 transmissions. As such, this Court is satisfied that the numerosity requirement is met.

#### 2.   Commonality

Commonality under Rule 23(a)(2) mandates that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "To satisfy the commonality requirement, a plaintiff must show that the class members have suffered 'the same injury,' meaning that class members' claims must 'depend upon a common contention' of such a nature that 'determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke.'"

United States District Court
Northern District of California

1    *Philips v. Ford Motor Co.*, 2016 WL 7428810, at *7 (N.D. Cal. Dec. 22, 2016), aff'd, 726 F.

2    App'x 608 (9th Cir. 2018) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S. Ct.

3    2541, 2551, 180 L. Ed. 2d 374 (2011)). In addition to "the raising of common questions," a

4    plaintiff must demonstrate "the capacity of a class-wide proceeding to generate

5    common answers apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350 (quoting

6    Richard A. Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97,

7    131–32 (2009)). A plaintiff's "common contention need not be one that will be answered, on the

8    merits, in favor of the class." *Alcantar v. Hobart Serv*., 800 F.3d 1047, 1053 (9th Cir. 2015)

9    (internal quotation marks omitted). Further, "for purposes of Rule 23(a)(2), even a single common

10   question will do." *Dukes*, 564 U.S. at 359 (alteration and quotation marks omitted).

11       Here, Plaintiff Hamm has alleged that the 722.9 transmission in all class vehicles suffer

12   from a common defect. "In automobile defect cases, commonality is often found when the most

13   significant question concerns the existence of a defect." *Philips*, 2016 WL 7428810, at *7 (quoting

14   *Parkinson v. Hyundai Motor Am*., 258 F.R.D. 580 (C.D. Cal. 2008)). Hamm has presented a

15   number of issues pertaining to the alleged defect that are common to the class: the existence of a

16   defect, whether MBUSA knew of the alleged defect, whether MBUSA had a duty to disclose its

17   knowledge of the alleged defect to the public, whether MBUSA breached that duty, and whether

18   the failures to disclose were material. Motion at 13; *see id.* (citing *Chamberlan v. Ford Motor Co.*,

19   402 F.3d 952, 962 (9th Cir. 2005) (holding that similar common questions met the commonality

20   requirement)).

21       When establishing commonality, "[t]he existence of shared legal issues with divergent

22   factual predicates is sufficient." *Philips*, 2016 WL 7428810, at *7 (quoting *Hanlon v. Chrysler

23   Corp*., 150 F.3d 1011, 1019 (9th Cir. 1998)). Because Hamm has asserted that class members

24   suffered the same injury, namely that the entire class was harmed at the point of purchase by

25   paying more for their Mercedes-Benz vehicle than they would had they known it was equipped

26

27   CASE NO.: 5:16-CV-03370-EJD
     ORDER DENYING MOTION FOR CLASS CERTIFICATION; DENYING MBUSA'S
     MOTION TO STRIKE EXPERT REPORT OF D.C. SHARP AND MOTION TO STRIKE
28   EXPERT REPORT OF MURAT OKCUOGLU; DEEMING MOOT PLAINTIFF'S MOTION TO
     STRIKE EXPERT REPORT AND TESTIMONY OF KEVIN LANE KELLER

United States District Court
Northern District of California

1   with a defective transmission, answers to common issues Hamm posits will provide answers

2   common to the class. As such, the Court finds that common issues such as the existence of a

3   defect and MBUSA's knowledge of the defect are enough to meet "the relatively 'minimal'

4   showing required to establish commonality." *Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523,

5   537 (N.D. Cal. 2012) (citing *Hanlon*, 150 F.3d at 1020).[2]

6   ### 3.   Typicality

7   Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical

8   of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive

9   standards, representative claims are 'typical' if they are reasonably co-extensive with those of

10  absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Class

11  certification is inappropriate, however, if a putative class representative is subject to "unique

12  defenses which threaten to become the focus of the litigation." *Hanon v. Dataproducts Corp.*, 976

13  F.2d 497, 508 (9th Cir. 1992) (quoting *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce,*

14  *Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990)).

15  Here, MBUSA argues that Hamm's claims are atypical because Hamm owns only one of

16  the many iterations of the 722.9 transmissions represented throughout the putative class. Def.'s

17  Resp. in Opp'n to Pl.'s Mot. for Class Certification at 21, Dkt. No. 100 ("Resp."). However,

18  Hamm's theory of liability is that all of the 722.9 transmissions are defective, regardless of the

19  specific iteration of the 722.9 transmission. Motion at 1. Hamm's legal theory asserted on his

20  behalf and on the behalf of the putative class does not differ based on which iteration of the 722.9

21  transmission is present in a class vehicle. Motion at 6–7. Because Hamm's claim "need not be

22  substantially identical" to the putative class, the Court finds that Hamm's ownership of only one

23  of the multiple iterations of the 722.9 transmissions to be "reasonably co-extensive with" and thus

24

25  ---
    [2] Although Hamm meets the commonality requirement under Rule 23(a)(2), he fails to show that
26  common issues will predominate under Rule 23(b)(3), as discussed later in this Order.

27

28

1   typical to the putative class. *Hanlon*, 150 F.3d at 1020.

2       MBUSA next contends that Hamm does not meet the Rule 23 typicality requirement

3   because he is subject to unique defenses. Resp. at 20; *see also Hanon,* 976 F.2d at 508; *Blair v.*

4   *RMC Lonestar*, 29 F.3d 630 (9th Cir. 1994) ("If [plaintiff's] claims were subject to unique

5   defenses, class certification should not have been granted because their claims would have failed

6   the typicality requirement."); *Hoexter v. Simmons*, 140 F.R.D. 416, 422–23 (D. Ariz. 1991)

7   (holding that because named plaintiffs are "subject to unique defenses…these plaintiffs' claims are

8   not typical of the claims of other class members"); *Rolex Emps. Ret. Tr. v. Mentor Graphics*

9   *Corp.*, 136 F.R.D. 658, 664 (D. Or. 1991) ("The certification of a class is questionable where it is

10  predictable that a major focus of the litigation will be on an arguable defense unique to the named

11  plaintiff or to a subclass."). Specifically, MBUSA argues Hamm's theory of reliance may be

12  atypical to those of the putative class because Hamm "purchased his 7-year old used vehicle from

13  a Toyota dealership without ever interacting with MBUSA or reviewing any materials from it; he

14  only glanced at unaffiliated third-party websites." *Id*. In contrast, some other members of the

15  putative class may have interacted with MBUSA and reviewed MBUSA's materials regarding

16  their class vehicle. Because of this, MBUSA argues Hamm's awareness of any potential disclosure

17  by MBUSA of the alleged defect may differ from the class members he seeks to represent. As

18  discussed further below under the Rule 23(b)(3) predominance analysis, because Hamm is unable

19  to use common evidence to infer reliance across the class, the Court finds that Hamm may be

20  subject to unique defenses that would render his claims atypical to those of the class. Thus,

21  typicality under Rule 23(a) is not met.

22          **4.  Fair and Adequate Representation of the Class**

23      The adequacy analysis under Rule 23(a)(4) requires that the class representatives "fairly

24  and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Determining whether

25  the named plaintiff will fairly and "adequately represent a class involves two inquiries: (1)

26

27  CASE NO.: 5:16-CV-03370-EJD
    ORDER DENYING MOTION FOR CLASS CERTIFICATION; DENYING MBUSA'S
    MOTION TO STRIKE EXPERT REPORT OF D.C. SHARP AND MOTION TO STRIKE
28  EXPERT REPORT OF MURAT OKCUOGLU; DEEMING MOOT PLAINTIFF'S MOTION TO
    STRIKE EXPERT REPORT AND TESTIMONY OF KEVIN LANE KELLER

United States District Court
Northern District of California

1    whether the named plaintiff and his or her counsel have any conflicts of interest with other class

2    members and (2) whether the named plaintiff and his or her counsel will act vigorously on behalf

3    of the class." *Calvert v. Red Robin Int'l, Inc*., 2012 WL 1668980, at *2 (N.D. Cal. May 11, 2012)

4    (citing *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)).

5        Here, the Court finds that Plaintiff's counsel has experience in prosecuting consumer

6    protection actions involving claims similar to those in the instant case. *See* Katriel Decl. ¶ 14, Ex.

7    13 (firm resume of Katriel Law Firm, P.C.); *id.* ¶ 15, Ex. 14 (firm resume of Kantrowitz

8    Goldhammer & Graifman, P.C). Plaintiff's counsel has vigorously litigated this case from its

9    inception, and MBUSA does not contend that Plaintiff's counsel will not continue to do so.

10    Further, there are no allegations present that Plaintiff's counsel has any conflicts of interests with

11    any members of the putative class. Thus, the Court finds that Plaintiff's counsel meets the

12    adequacy requirement.

13        Turning to the fairness and adequacy of representation by the named plaintiff, Hamm and

14    the proposed class share the same claims and interest in obtaining relief and Hamm is vigorously

15    pursuing relief on behalf of the proposed class. Hamm shares an interest with members of the

16    proposed class in proving that the 722.9 transmissions were defective and that the proposed class

17    was injured as a result of the alleged defect. MBUSA also does not argue that Hamm has any

18    conflicts of interest with other class members. Thus, the Court finds that Hamm is an adequate

19    class representative under Rule 23(a)(4).

20                  **5.  Ascertainability**

21        Along with the explicit four requirements enumerated in Rule 23(a), many courts have

22    additionally held that Rule 23(a) contains an "implied prerequisite" that the class be

23    ascertainable. *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011); *see*

24    *also, e.g.*, *In re Yahoo Mail Litig.*, 308 F.R.D. at 596; *Herrera*, 274 F.R.D. at 672. A class

25    definition is sufficient if the description of the class is "definite enough so that it is

26

CASE NO.: 5:16-CV-03370-EJD
27   ORDER DENYING MOTION FOR CLASS CERTIFICATION; DENYING MBUSA'S
MOTION TO STRIKE EXPERT REPORT OF D.C. SHARP AND MOTION TO STRIKE
28   EXPERT REPORT OF MURAT OKCUOGLU; DEEMING MOOT PLAINTIFF'S MOTION TO
STRIKE EXPERT REPORT AND TESTIMONY OF KEVIN LANE KELLER

*United States District Court*
*Northern District of California*

1   administratively feasible for the court to ascertain whether an individual is a member." *O'Connor*

2   *v. Boeing N. Am. Inc.,* 184 F.R.D. 311, 319 (C.D. Cal. 1998) (internal citation omitted). In

3   addition, impermissibly overbroad classes can defeat a court's ability to ascertain a class. *See Red*

4   *v. Kraft Foods, Inc*., 2012 WL 8019257, at *3 (C.D. Cal. Apr. 12, 2012).

5          Here, MBUSA argues that the proposed class is impermissibly overbroad as it may include

6   many people who never suffered any injury. Resp. at 21–22. MBUSA first points to a 0.13%

7   warranty rate for claims relating to the 722.9 transmission to support their argument that the vast

8   majority of the class never experienced any issue with their 722.9 transmission. Resp. at 22.

9   However, the Ninth Circuit has "held that proof of the manifestation of a defect is not a

10  prerequisite to class certification." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1173

11  (9th Cir. 2010) (citing *Blackie v. Barrack,* 524 F.2d 891, 901 (9th Cir. 1975)).

12         Next, MBUSA asserts that all putative class members who purchased class vehicles

13  outfitted with the VGS3 or VGS4 iterations of the 722.9 transmission should be excluded as not

14  having suffered any injury. Resp. at 22. In support of this assertion, MBUSA claims Plaintiff's

15  expert Murat Okcuoglu does not consider these iterations of the 722.9 transmission defective. *Id*.

16         MBUSA mischaracterizes Plaintiff's expert Okcuoglu's testimony. Importantly, Plaintiff's

17  expert Okcuoglu's testimony makes clear that he does not definitively state what specific

18  iterations he concludes are not defective or are defective. Ex. 1 to Knapp Decl. at 134:10–14, Dkt.

19  No. 100-2. As MBUSA itself quotes in their opposition, in response to MBUSA's inquiry as to

20  which iteration of the 722.9 transmissions are defective, Plaintiff's expert Okcuoglu clearly states

21  his position: "[b]efore I do my analysis, I cannot say with certainty. Maybe none of them are

22  defective, as you say, or maybe some of them are defective or maybe all of them are defective. But

23  as I sit here, without doing my analysis, I don't have the answer for you." *Id.* Ex. 1 at 134:10–14.

24  As Okcuoglu's testimony demonstrates, Okcuoglu has not provided a definitive conclusion as to

25  which iterations of the 722.9 transmissions he believes are defective.

26

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

Further, MBUSA argues that those putative class members who have had parts of their transmission "replaced for free under warranty or goodwill" do not have an injury and their inclusion would render the class impermissibly overbroad. Resp. at 22. The Court agrees. If a putative class includes "persons who already have received refunds or replacement parts or who have not suffered any damages at all, it is not ascertainable." *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1152 (N.D. Cal. 2010); *see also Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 455 (S.D. Cal. 2014) ("[B]ecause the class does not exclude purchasers who have already received refunds through Maybelline's Refund program, it is overbroad and not ascertainable."); *Conde v. Sensa*, 2018 WL 4297056, at *17 (S.D. Cal. Sept. 10, 2018) ("the Court finds that Plaintiff [] has failed to establish an ascertainable class because the proposed class does not exclude purchasers who have already received funds from the FTC settlement"); *Minkler v. Kramer Labs., Inc.*, 2013 WL 3185552, at *3 (C.D. Cal. Mar. 1, 2013) ("The Class will also include hundreds of members who have already received refunds from Defendants pursuant to Defendants' money back guarantee. However, such members have no injury and no standing to sue.") (internal quotations and alterations omitted); *Turcios v. Carma Labs., Inc.*, 296 F.R.D. 638, 645 (C.D. Cal. 2014) ("At a minimum, the proposed class is overbroad because it would include consumers who already received refunds and, therefore, have not suffered any damages.").

In *Stearns*, a plaintiff sought to represent a class of bed purchasers in a suit against a defendant bed manufacturer to recover damages due to an alleged defect causing mold growth in beds purchased by the putative class. *Stearns*, 763 F. Supp. 2d at 1134–35. In holding that the putative class was not ascertainable, the *Stearns* court reasoned that those class members who may "already have received refunds or replacement parts" from the defendant would have "no injury and no standing to sue" as those class members would have no out-of-pocket damages resulting from the alleged defect. *Stearns*, 763 F. Supp. 2d at 1152.

//

CASE NO.: 5:16-CV-03370-EJD
ORDER DENYING MOTION FOR CLASS CERTIFICATION; DENYING MBUSA'S MOTION TO STRIKE EXPERT REPORT OF D.C. SHARP AND MOTION TO STRIKE EXPERT REPORT OF MURAT OKCUOGLU; DEEMING MOOT PLAINTIFF'S MOTION TO STRIKE EXPERT REPORT AND TESTIMONY OF KEVIN LANE KELLER

United States District Court
Northern District of California

1   Here, anyone who had purchased Mercedes-Benz vehicles with the allegedly defective

2   722.9 transmission would be included in the putative class with no differentiation within the class

3   as to those who may have had received repairs and/or replacement parts, at no cost, to their

4   transmission by MBUSA or its agents. Like in *Stearns,* those class members who may have

5   received repairs and/or replacement parts to their transmission at no cost would also have "no

6   injury and no standing to sue." *Stearns*, 763 F. Supp. 2d at 1152. In effect, these class members

7   have already been made whole from any loss stemming from the alleged defect and thus are

8   improperly included within the class.

9   The overbreadth of the putative class, however, is easily cured by excluding owners and

10  lessees of Mercedes-Benz vehicles equipped with the 722.9 transmission who have received any

11  free repairs to or free replacement of their 722.9 transmission by MBUSA or its agents. *See Mazur*

12  *v. eBay Inc.,* 257 F.R.D. 563, 568 (N.D. Cal. 2009) (recognizing the court's inherent power to

13  modify proposed class definitions to make them sufficiently definite) (citing *Hagen v. City of*

14  *Winnemucca,* 108 F.R.D. 61, 64 (D. Nev. 1985)). The Court finds that the following definitions

15  would make the proposed class and the alternative proposed class more ascertainable:

16      All California owners and lessees of Mercedes-Benz vehicles
        equipped with the 722.9 7G Tronic transmission who have not
17      received any free repairs to or free replacement of their 722.9
        transmission by Defendant Mercedes-Benz USA, LLC ("MBUSA")
18      or its agents. Excluded from this Class definition are all employees,
        officers, or agents of MBUSA. Also excluded from this Class
19      definition are all judicial officers assigned to this case as well as their
        staff and immediate families.
20

21  In the alternative, the narrower class is defined as:

22      All California owners and lessees of Mercedes-Benz vehicles
        equipped with the VGS1 generation of the 722.9 7G Tronic
23      transmission (which were equipped on the 2004-2007 Mercedes
        model year vehicles outfitted with the 722.9 7G Tronic transmission)
24      who have not received any free repairs to or free replacement of their
        722.9 transmission by MBUSA or its agents. Excluded from this
25      Class definition are all employees, officers, or agents of MBUSA.
        Also excluded from this Class definition are all judicial officers
26

27  CASE NO.: 5:16-CV-03370-EJD
    ORDER DENYING MOTION FOR CLASS CERTIFICATION; DENYING MBUSA'S
    MOTION TO STRIKE EXPERT REPORT OF D.C. SHARP AND MOTION TO STRIKE
28  EXPERT REPORT OF MURAT OKCUOGLU; DEEMING MOOT PLAINTIFF'S MOTION TO
    STRIKE EXPERT REPORT AND TESTIMONY OF KEVIN LANE KELLER

1   assigned to this case as well as their staff and immediate families.

2   Additionally, as previously provided in Hamm's original class definitions, excluded from both

3   definitions are all persons who claim personal injuries resulting from the defect alleged in this

4   action. Both definitions also are limited to natural persons. The Court proceeds with the Rule 23

5   analysis under the Court-modified class definition.

6       **ii.      Rule 23(b)(3)**

7               **Predominance**

8       Rule 23(b)(3) requires that "questions of law or fact common to class members

9   predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). This

10  requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by

11  representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d

12  689 (1997). Class certification under Rule 23(b)(3) is proper when common questions represent a

13  significant portion of the suit and can be resolved for all members of the class in a single

14  adjudication. *Comcast v. Behrend*, 569 U.S. 27, 133 S.Ct. 1426, 185 L.Ed.2d 515 (2013). Rule

15  23(b)(3) demands a showing that questions common to the class predominate, not that those

16  questions "will be answered, on the merits, in favor of the class." *Alcantar v. Hobart Serv*., 800

17  F.3d 1047, 1053 (9th Cir. 2015). Importantly, the premise of a Rule 23(b)(3) certification ruling is

18  not to adjudicate the case; rather, it is to select the method best suited to adjudication of the

19  controversy "fairly and efficiently." *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*,

20  568 U.S. 455, 461, 133 S.Ct. 1184, 185 L.Ed.2d 308 (2013).

21      Here, Hamm presents several common issues that he argues predominate in the proposed

22  class in accordance with Rule 23(b)(3). *See* Fed. R. Civ. P. 23(b)(3). First, Hamm argues that

23  proving the existence of the systemic defect present in 722.9 transmissions presents a

24  predominating question. Motion at 9. Second, Hamm argues that MBUSA's duty to disclose the

25  alleged defect present in the 722.9 transmission is a common predominating question. *Id*. at 13.

26

27  CASE NO.: 5:16-CV-03370-EJD
    ORDER DENYING MOTION FOR CLASS CERTIFICATION; DENYING MBUSA'S
    MOTION TO STRIKE EXPERT REPORT OF D.C. SHARP AND MOTION TO STRIKE

28  EXPERT REPORT OF MURAT OKCUOGLU; DEEMING MOOT PLAINTIFF'S MOTION TO
    STRIKE EXPERT REPORT AND TESTIMONY OF KEVIN LANE KELLER

13

United States District Court
Northern District of California

1    Third, Hamm argues that MBUSA's knowledge of the allege defect poses a common

2    predominating question. *Id*. at 15. Fourth, Hamm argues that class members' reliance on

3    MBUSA's alleged non-disclosure of the defect is a common predominating question. *Id*. Fifth,

4    Hamm argues that proving that class members suffered an injury as a result of MBUSA's non-

5    disclosure of the alleged defect is a common predominating question. *Id*. at 19.

6          In contrast, MBUSA asserts that individual issues will predominate for a number of

7    reasons. First, MBUSA argues that Hamm has failed to produce sufficient evidence and a theory

8    capable of demonstrating a common classwide defect. Resp. at 6, 12. Second, MBUSA argues that

9    Hamm cannot prove MBUSA's knowledge of the allege defect using common evidence. *Id*. at 16.

10   Third, MBUSA argues that Hamm will not be able to show that exposure to and reliance on

11   omissions of the alleged defect would be common to the class. *Id*. at 17. Fourth, MBUSA argues

12   that Hamm has not presented a damages model that aligns with his legal theory. *Id*. at 22–23. The

13   Court considers these arguments in succession and, as discussed further below, concludes that

14   Hamm overcomes MBUSA's arguments against predominance under Rule 23(b)(3) with the

15   exception of determining reliance. Ultimately, the Court finds that, because individual inquiries

16   will predominate in determining reliance across the class, the predominance requirement under

17   Rule 23(b)(3) is not met and the class cannot be certified as a result.

18       **1. Common Defect**

19         MBUSA asserts that Hamm fails to produce any evidence or theory that identifies a

20   common defect in the 722.9 transmissions. Resp. at 6. More specifically, MBUSA argues that

21   Hamm must show at the class certification stage what precisely is defective about the 722.9

22   transmissions. *Id.* MBUSA points to the many iterations and components of the 722.9

23   transmissions to support its contention that Hamm's allegations of a common defect are

24   insufficient. *Id.* at 7.

25   //

26

27   CASE NO.: 5:16-CV-03370-EJD
     ORDER DENYING MOTION FOR CLASS CERTIFICATION; DENYING MBUSA'S
     MOTION TO STRIKE EXPERT REPORT OF D.C. SHARP AND MOTION TO STRIKE
28   EXPERT REPORT OF MURAT OKCUOGLU; DEEMING MOOT PLAINTIFF'S MOTION TO
     STRIKE EXPERT REPORT AND TESTIMONY OF KEVIN LANE KELLER

United States District Court
Northern District of California

1   Hamm argues the opposite.  He contends that the inquiry at the class certification stage is

2   not whether a common defect exists or has been proven but, instead, whether the plaintiff has

3   established a means by which he intends to make that proof from evidence common to the class.

4   Motion at 10–11.

5   Hamm's position is well supported by a number of defective product cases. *See Victorino,*

6   2019 WL 5268670, at *6; *In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334, 361 (N.D.

7   Cal. 2018) ("Plaintiffs' burden at [the class certification] stage is not to establish that the alleged

8   common latency defects exist. Instead, Plaintiffs' burden is to establish that the existence of the

9   defects is subject to common proof, and that such common questions predominate over individual

10  questions."); *Edwards v. Ford Motor Co.*, 603 F. App'x 538, 540 (9th Cir. 2015) ("In order to

11  satisfy the predominance requirement, the plaintiff need not prove the existence of the defect.");

12  *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 459, 133 S. Ct. 1184, 1191, 185

13  L. Ed. 2d 308 (2013) ("Rule 23(b)(3) requires a showing that questions common to the class

14  predominate, not that those questions will be answered, on the merits, in favor of the class.").

15  Here, Hamm has identified the type of common evidence that he will use to prove his

16  theory and thus may provide answers to common questions predominating throughout the class.

17  Specifically, Hamm's expert opines that "[b]y comparing the differences between the 'repair kit'

18  parts and the original [non-defective] parts that the 'repair kit' contains, it is possible to ascertain

19  directly the changes that were made by the 'repair kit' to address the problem at hand. This

20  comparison, in turn, provides a direct means of assessing the presence and nature of the common

21  defect that plaintiff alleges plagues the 722.9 7G Tronic transmission." Ex. 1 to Katriel Decl.,

22  Okcuoglu Expert Rpt. ¶34. As such, Hamm has sufficiently outlined a common evidentiary basis

23  by which the alleged defect may be proven across the class in a manner that predominates over

24  individualized inquiries.[3]

25

26  [3]  MBUSA's motion to strike Hamm's expert Murat Okcuoglu is discussed in section (B)(1) to

### 2.   MBUSA's Knowledge of the Alleged Defect

Hamm contends that MBUSA's knowledge of the alleged defect prior to selling vehicles outfitted with the 722.9 transmission presents another common predominating question providing an answer uniform across the class. Motion at 15. To evidence MBUSA's knowledge of the alleged defect, Hamm points to potential "information presented to MBUSA about the defect by customers, dealers, or its supplier," as well as MBUSA's documentation of warranty claims, as early as 2003, relating to problems with the 722.9 transmissions. *Id.*

MBUSA counters that documentation of warranty claims is "insufficient to show that [a defendant] had knowledge" of an alleged defect across all class products. Resp. at 16. (quoting *Berenblat v. Apple, Inc.*, 2010 WL 1460297, at *9 (N.D. Cal. Apr. 9, 2010)). However, MBUSA's reliance on *Berenblat* is misplaced. *See Berenblat,* 2010 WL 1460297, at *9. To begin, *Berenblat* contained no discussion of product warranty claims whatsoever. *Id.* In *Berenblat*, a defendant moved to dismiss a putative class of plaintiffs' fraud-based claims for failure to allege, among other things, the defendant's knowledge of an alleged product defect. *See id.* at *1. The *Berenblat* court concluded that complaints posted on the defendant's consumer website, without more, were insufficient to show the defendant had knowledge of the alleged defect. *See id.* at *9. Contrasting *Berenblat*, consumers posting on a website cannot be deemed to be equivalent to the intake of warranty claims for the purposes of showing a defendant's knowledge of an alleged defect. *Id.* While MBUSA's attacks on the use of warranty claims to evidence MBUSA's knowledge of the alleged defect may be better directed at a fact-finder, such assertions do not defeat predominance for Hamm under Rule 23(b)(3).

### 3.   Damages Model

The calculations of damages attributable to each class member "is invariably an individual question and does not defeat class action treatment." *See Leyva v. Medline Indus., Inc.*, 716 F.3d

this Order.

United States District Court
Northern District of California

510, 514 (9th Cir. 2013). Nonetheless, Plaintiff holds the burden to offer a damages model that demonstrates that "damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." *Comcast,* 569 U.S. at 34. This damages model "must measure only those damages attributable to" Plaintiff's theory of liability. *Id.* In the absence of a plausible damages model that matches Plaintiff's theory of liability, the court will have to look into individual situations to determine the appropriate measure of damages." *In re MyFord Touch Consumer Litig.*, 2016 WL 7734558, at *15 (N.D. Cal. Sept. 14, 2016). As such, class certification is appropriate when a Plaintiff offers a classwide method for proving damages. *See Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 987 (9th Cir. 2015) (citing *Comcast*, 569 U.S. at 34).

MBUSA argues that Hamm's damages model fails to establish a predominating question that asserts "classwide injury because it fails to isolate injuries attributable solely to the claimed defect." Resp. at 22 (citing *Comcast*, 569 U.S. at 35; *In re Conagra Foods, Inc*., 302 F.R.D. 537, 579 (C.D. Cal. 2014)). MBUSA offers three reasons why Hamm's damages model is insufficient.

First, MBUSA claims that Hamm's expert, Dr. Sharp, "merely compares used car prices for Mercedes-Benz vehicles equipped with different (5-speed) transmissions to used car prices for Mercedes-Benz vehicles with 7-speed transmissions (722.9s)" to establish an average diminution in value that "is not tied to any specific aspect of the many different 722.9s." Resp. at 23. MBUSA is oversimplifying Dr. Sharp's econometric hedonic regression model. Dr. Sharp's regression model incorporates and controls for a spectrum of different car characteristics. *Id.* As such, Dr. Sharp's regression model seeks to isolate the effect of the 722.9 transmission on a vehicle's value relative to the value of a vehicle without an allegedly defective transmission. *Id*. Similar regression analyses have been frequently accepted by courts within the Ninth Circuit. *See Schmitt v. Younique LLC*, 2019 WL 1431906, at *9 -*10 (C.D. Cal. Jan. 10, 2019); *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 946-48 (C.D. Cal. 2015); *In re Toyota Motor Corp. Hybrid Brake*

*Marketing, Sales, Practices and Prods. Liab. Litig*., 2012 WL 4904412, at \*4 (C.D. Cal. Sept. 20, 2012); *McCrary v. Elations Company LLC*, 2014 WL 12589137, at \*7 - \*10 (C.D. Cal. Dec. 2, 2014). This Court is satisfied that Hamm's regression model, seeking to valuate the presence of the allegedly defective 722.9 transmission in class vehicles, is sufficiently tied to his theory of liability.

After isolating the effect of the 722.9 transmission on a class vehicles' dollar value via a regression analysis, Plaintiff's expert Dr. Sharp employs a sum-of-years' ("SYD") digits accounting method "in order to allocate the loss of value among the original and used subsequent owners over the years." Motion at 23. Through the SYD method, Hamm seeks to allocate a portion of the 722.9 transmission's value, as determined by Hamm's regression analysis, to the current vehicle's owner. *Id*. Because class vehicles may have had multiple owners, Hamm's SYD method depreciates the value of the 722.9 transmissions to account for previous ownership. *Id*. MBUSA attacks Hamm's use of a sum-of-years' digits accounting method for failing to account for class members who purchased their class vehicles after the alleged defect was publicly disclosed and therefore purchased their class vehicle already factoring in the information regarding the alleged defect. Resp. at 24. Because of this, MBUSA claims that the SYD method fails to "overcome individualized inquiries" and therefore cannot satisfy predominance. *Id*. Throughout its opposition, MBUSA denies the notion that there was ever any public disclosure regarding the presence of a defective 722.9 transmission. However, here, in MBUSA's argument against Hamm's utilization of its SYD method, MBUSA is faulting Hamm for failing to incorporate class members who purchased their class vehicles after the alleged defect was *disclosed*, an event MBUSA maintains never occurred. Resp. at 24 (emphasis added). In light of these duplicitous assertions, MBUSA's argument against Hamm's SYD methodology lacks merit and does not defeat predominance.

//

CASE NO.: 5:16-CV-03370-EJD
ORDER DENYING MOTION FOR CLASS CERTIFICATION; DENYING MBUSA'S MOTION TO STRIKE EXPERT REPORT OF D.C. SHARP AND MOTION TO STRIKE EXPERT REPORT OF MURAT OKCUOGLU; DEEMING MOOT PLAINTIFF'S MOTION TO STRIKE EXPERT REPORT AND TESTIMONY OF KEVIN LANE KELLER

18

United States District Court
Northern District of California

1       Finally, MBUSA argues that Hamm's proposal for restitution under the UCL – that class

2   members are entitled to recover the cost of replacement or repair parts to their allegedly defective

3   722.9 transmission – also fails to satisfy predominance because it operates under the "assumption

4   that no class member received any benefit from the replacement or repairs." Resp. at 24 (quoting

5   *Philips*, 2016 U.S. Dist. LEXIS 177672, at *74-*75). However, Hamm's proposal for restitution

6   under the UCL here can be distinguished from *Philips*. In *Philips*, the court denied a plaintiff's

7   damages model that sought "reimbursement of the *full amount* paid for replacement or repair" of

8   allegedly defective power steering systems. *Philips*, 2016 WL 7428810, at *22 (emphasis added).

9   The *Philips* court reasoned that "[r]ecovering the full amount of replacement and repair costs

10  would be justified only 'if not a single class member received any benefit' from those

11  replacements or repairs." *Id.* (quoting *Caldera v. J.M. Smucker Co.*, 2014 WL 1477400, at *4

12  (C.D. Cal. Apr. 15, 2014)). While Hamm is silent as to any benefit (or lack thereof) that class

13  members may have received as a result of repairs to the 722.9 transmissions, Hamm's theory of

14  restitution can be characterized as one seeking to disgorge MBUSA from profits attained from

15  class members solving a problem that MBUSA allegedly created. *See Feitelberg v. Credit Suisse

16  First Bos., LLC*, 134 Cal. App. 4th 997, 1013, 36 Cal. Rptr. 3d 592, 602–03 (2005) ("As the

17  California Supreme Court held, 'disgorgement of money obtained through an unfair business

18  practice is an available remedy in a representative action only to the extent that it constitutes

19  restitution.'" (quoting *Korea Supply, supra,* 29 Cal.4th at 1145, 131 Cal. Rptr. 2d 29, 63 P.3d

20  937)). Specifically, Hamm alleges that "by selling the Class Vehicles with a defective

21  transmission, MBUSA was able to realize a profit at the expense of class members who had to pay

22  for a replacement transmission conductor plate or valve body." Motion at 24. Notably, Hamm is

23  not proposing "reimbursement of the full amount paid for replacement or repair" of the 722.9

24  transmissions, costs that may include labor and other services in addition to the cost of

25  replacement parts. *Philips*, 2016 WL 7428810, at *22. In contrast, Hamm's proposal for restitution

26

27  CASE NO.: 5:16-CV-03370-EJD
    ORDER DENYING MOTION FOR CLASS CERTIFICATION; DENYING MBUSA'S
    MOTION TO STRIKE EXPERT REPORT OF D.C. SHARP AND MOTION TO STRIKE
28  EXPERT REPORT OF MURAT OKCUOGLU; DEEMING MOOT PLAINTIFF'S MOTION TO
    STRIKE EXPERT REPORT AND TESTIMONY OF KEVIN LANE KELLER
                                    19

suggests that each "class member would be entitled to recover back the cost of these *replacement parts*," thus distinguishing Hamm's proposal from the type of blanket full reimbursement sought in *Philips*. Motion at 24 (emphasis added); *c.f. Philips*, 2016 WL 7428810, at *22. As such, MBUSA's argument against Hamm's proposal for restitution under the UCL does not negate predominance for Hamm under Rule 23(b)(3).

### 4. Reliance

Next, MBUSA argues that individual questions will predominate throughout the class when demonstrating exposure to and reliance on omissions of the alleged 722.9 transmission defect. Because MBUSA contends that it has disclosed symptoms of the alleged defect in the owners' manuals for the various class vehicles[4], MBUSA argues that extensive individual inquiries will be necessary to decide whether class members were exposed to and relied on the information contained in its owners' manuals. Resp. at 17. As such, a class member who read the owner's manual may have no damages whatsoever "as he would not have had 'an expectation that the [transmission] would work without flaws.'" *Id.* (quoting *Philips*, 2016 U.S. Dist. LEXIS 177672, at *52).

To prevail under a CLRA claim, a plaintiff must show that had a disclosure been made, the plaintiff would reasonably have been aware of the disclosure and, if so, would have behaved differently. *See Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225-26 (9th Cir. 2015). Hamm argues that reliance on MBUSA's omission of the alleged defect may be satisfied through common evidence that class members would have been aware of a disclosure regarding the defect and the notion that class members would have behaved differently, based on their knowledge of such a

---

[4] MBUSA maintains that the possibility of "limp mode" was included in the owners' manuals for Mercedes-Benz class vehicles and that the owners' manuals are readily available to consumers, including prior to purchase. "For example, the owner's manual for the 2006 CLK 350 Mercedes-Benz vehicle owned by Plaintiff Hamm provides: Emergency operation (Limp Home Mode) If vehicle acceleration worsens or the transmission no longer shifts, the transmission is most likely operating in limp home (emergency operation) mode. In this mode only second gear and reverse gear can be activated." Keller Decl. ¶ 21, Dkt. No. 100-10.

United States District Court
Northern District of California

disclosure, may be presumed across the class. Motion at 15. Showing that a class member would have behaved differently may indeed be presumed if the omission is material. *See Daniel*, 806 F.3d at 1225. Importantly, materiality can be determined on an objective standard because under the California Supreme Court's decision in *Tobacco II*, "[a]n omission is material if a reasonable consumer 'would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question.'" *Daniel*, 806 F.3d at 1225 (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298 (2009)). Thus, materiality can be determined on a classwide basis using a "reasonable consumer" standard. *Id.*

Even with a showing that an omission is material and thus class members would have reasonably behaved differently had they been armed with information regarding the alleged defect, Hamm must still demonstrate that class members would have been aware of any such disclosure of the alleged defect. Hamm cites to *Doyle v. Chrysler Group LLC* in support of the proposition that when a manufacturer is "engaged in a 'wholesale nondisclosure' of the alleged defect, evidence that the consumer class members would have been aware of a disclosure of a material defect may be presumed." Motion at 17; *Doyle v. Chrysler Grp. LLC*, 2014 WL 3361770, at *6 (C.D. Cal. July 3, 2014). While courts may indeed often infer reliance, "the Ninth Circuit has also held that the presumption of reliance is not always appropriate," particularly in circumstances where it cannot be conclusively said that a defendant manufacturer is engaged in a wholesale nondisclosure of an alleged defect. *Philips*, 2016 WL 7428010, at *15 (N.D. Cal. Dec. 22, 2016); *see also Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012); *Butler v. Porsche Cars N. Am., Inc.*, 2017 WL 1398316, at *10 (N.D. Cal. Apr. 19, 2017); *In re Myford Touch Consumer Litig.*, 2016 WL 7734558, at *21 (N.D. Cal. Sept. 14, 2016).

In *Mazza v. American Honda Motor Company*, the Ninth Circuit rejected arguments by plaintiffs that the court should presume that class members relied on alleged omissions and misleading statements by the defendant automobile manufacturer in regard to an allegedly

United States District Court
Northern District of California

United States District Court
Northern District of California

1   defective braking system. *See Mazza*, 666 F.3d at 596. The Ninth Circuit held that a presumption

2   of reliance in *Mazza* was inappropriate largely because the defendant auto manufacturer's

3   statements in their advertising materials "d[id] not deny that limitations exist" as to the braking

4   system. *Id.* The *Mazza* court reasoned that those class members who were exposed to the

5   defendants' statements would likely not have had the expectation that the braking system would

6   not suffer from any flaws and thus a presumption of reliance is improper. *Id.*

7       Relying on the Ninth Circuit's holding in *Mazza*, the court in *Philips* similarly denied a

8   proposed named plaintiff's argument that reliance may be presumed across a purported class of

9   purchasers of automobiles with an allegedly defective power steering system. *Philips*, 2016 WL

10  7428810, at *16. In *Philips*, the court highlighted that "a warning about sudden [power steering]

11  failure was present in the owner's manuals for all class vehicles" and thus, "it would require

12  extensive individualized inquiries to know which class members had the opportunity to read these

13  portions of the owner's manuals before purchasing their vehicles." *Id.* at *16. The *Philips* court

14  further noted that, "[a] class member who read the owner's manual may therefore have no

15  damages." *Id.* In light of these owners' manual warnings of the symptoms of the alleged defect,

16  the *Philips* court held that "class members were exposed to 'quite disparate information,' some of

17  which explicitly acknowledged the limitations of the [power steering] systems, and thus a

18  presumption of reliance is inappropriate." *Id.* at *16 (quoting *Stearns v. Ticketmaster Corp.*, 655

19  F.3d 1013, 1020 (9th Cir. 2011)). Because "individual issues will predominate over common

20  issues in determining reliance," the *Philips* court denied the plaintiffs' motion for class

21  certification.

22      Here, MBUSA's disclosures in its owner's manual are comparable to the very symptoms

23  of the defect that Hamm alleges, that is that "the car locked into low gear [and] was left unable to

24  accelerate." Motion at 2. In comparison, the owner's manual for Hamm's 2006 CLK 350

25  Mercedes-Benz similarly describes that "[i]f vehicle acceleration worsens or the transmission no

26

27  CASE NO.: 5:16-CV-03370-EJD
    ORDER DENYING MOTION FOR CLASS CERTIFICATION; DENYING MBUSA'S
    MOTION TO STRIKE EXPERT REPORT OF D.C. SHARP AND MOTION TO STRIKE

28  EXPERT REPORT OF MURAT OKCUOGLU; DEEMING MOOT PLAINTIFF'S MOTION TO
    STRIKE EXPERT REPORT AND TESTIMONY OF KEVIN LANE KELLER

longer shifts, the transmission is most likely operating in limp home (emergency operation) mode. In this mode only second gear and reverse gear can be activated." Keller Decl. ¶ 21, Dkt. No. 100-10. Similar to the class members in *Philips* and *Mazza*, class members "who read the warnings in Class Vehicles' owner's manuals would be aware that 'limitations exist' and that the [transmission] may fail unexpectedly." *Philips*, 2016 WL 7428810, at *16 (quoting *Mazza,* 666 F.3d at 596). As such, the unknown number of class members who may have been exposed to the information contained in the owners' manuals discussing the possibility of "limp mode" would likely have no damages. To decipher which class members were aware of the potential "limp mode" failure of their transmission would require extensive individual inquiries and thus a presumption of reliance is inappropriate. *Philips*, 2016 WL 7428810, at *23. Therefore, because the Court finds that "the issue of ... reliance is a matter that would vary from consumer to consumer," individual issues will predominate over common issues in determining reliance. *Philips*, 2016 WL 7428810, at *16 (quoting *Webb v. Carter's Inc.*, 272 F.R.D. 489, 502 (C.D. Cal. 2011). This defeats predominance for Hamm under Rule 23(b)(3) and warrants the denial of class certification.

**B. Daubert Motions**

MBUSA moves to strike Dr. D.C. Sharp and Murat Okcuoglu's expert reports in support of Plaintiff's Motion for Class Certification for failing to meet the standards required by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and Rule 702 of the Federal Rules of Evidence. The Court DENIES MBUSA's motion to exclude the expert report of Dr. Sharp and DENIES MBUSA's motion to exclude the expert report of Murat Okcuoglu.

Federal Rule of Evidence 702 allows admission of "scientific, technical, or other specialized knowledge" by a qualified expert if it will "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Expert testimony is admissible pursuant to Rule 702 if it is both relevant and reliable. *Daubert*, 509 U.S. at 589, 113 S.Ct. 2786.

CASE NO.: 5:16-CV-03370-EJD
ORDER DENYING MOTION FOR CLASS CERTIFICATION; DENYING MBUSA'S MOTION TO STRIKE EXPERT REPORT OF D.C. SHARP AND MOTION TO STRIKE EXPERT REPORT OF MURAT OKCUOGLU; DEEMING MOOT PLAINTIFF'S MOTION TO STRIKE EXPERT REPORT AND TESTIMONY OF KEVIN LANE KELLER

United States District Court
Northern District of California

An expert witness may provide opinion testimony if: (1) the testimony is based upon sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702. "The duty falls squarely upon the district court to 'act as a gatekeeper to exclude junk science that does not meet Federal Rule of Evidence 702's reliability standards.'" *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (en banc) (quoting *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011)). However, this duty is to evaluate not the correctness of the expert's conclusions, but the principles and methodology used to generate the conclusions. *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010). Moreover, the inquiry into admissibility of expert opinion is a "flexible one," where "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Id.* (citing *Daubert*, 509 U.S. at 594, 113 S.Ct. 2786). In other words, the Court has broad discretion and flexibility in structuring and assessing an expert's reliability. *Murray v. S. Route Mar. SA*, 870 F.3d 915, 924 (9th Cir. 2017). The Ninth Circuit has approved of the application of the standard in *Daubert* to expert reports in support of or in opposition to motions for class certification. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011)

### 1. Motion to Strike Expert Report of Murat Okcuoglu

MBUSA does not dispute that Okcuoglu is qualified to offer an expert opinion. Instead, MBUSA argues that Okcuoglu's report should be excluded because Okcuoglu has not identified an alleged defect, has not developed any methodology for identifying the alleged defect that may be applied to the facts of the case, and because Okcuoglu's opinions do not "fit" Hamm's class certification theory. Def.'s Mot. to Strike the Report of Pl.'s Expert Murat Okcuoglu at 1–2, Dkt. No. 101 ("Okcuoglu Mot. to Strike").

First, MBUSA asserts that Okcuoglu's failure to offer a methodology for determining the existence of an alleged common defect requires that his expert report be stricken. Okcuoglu Mot.

United States District Court
Northern District of California

United States District Court
Northern District of California

to Strike at 3. Specifically, MBUSA contends that Okcuoglu has "failed 'to provide any specific information about the [proposed] methodology' and only offered an 'unsupported, conclusory promise of reliable data." *Id.* at 3 (quoting *Pedroza v. PetSmart, Inc.*, 2013 U.S. Dist. LEXIS 53794, at *11-*12 (C.D. Cal. Jan. 28, 2013)) (internal quotations omitted). The Court disagrees. Okcuoglu's methodology entails disassembling MBUSA's "repair kit" and comparing it with the "unrepaired original exemplar" parts from 722.9 transmissions to determine what the "repair kit" seeks to remedy within the 722.9 transmissions. Opp'n to Mot. to Strike the Report of Pl.'s Expert Murat Okcuoglu at 8, Dkt. No. 106 ("Okcuoglu Opp'n"); *see also* Katriel Decl., Ex. 1 ¶ 34 ("Because Daimler AG manufactured the 'repair kits' for the 722.9 7G Tronic transmission, one can compare the components present in the 'repair kits' with the components in the original 722.9 7G Tronic transmission before the use of the 'repair kit.' By comparing the differences between the 'repair kit' parts and the original parts that the 'repair kit' contains, it is possible to ascertain directly the changes that were made by the 'repair kit' to address the problem at hand."). Okcuoglu has "already procured several exemplar vehicles and valve bodies" of the various 722.9 transmissions "to undertake that analysis." *Id.* at 3.

Further, after reviewing a number failures and complaints regarding the 722.9 transmissions, Okcuoglu has identified the conductor plate of the 722.9 transmissions as a common denominator in the alleged defect across the 722.9 transmission, and thus the conductor plate is a focus of his analysis. *Id.* at 3–4 (quoting Ex. 2 to Katriel Opp. Decl., at 126:8–12, 127:4–6). The Court is satisfied that Okcuoglu has presented a sufficient methodology for determining the existence of an alleged common defect plaguing the 722.9 transmissions.

Next, MBUSA argues that Okcuoglu's report should be stricken because Okcuoglu has not applied a reliable methodology to the facts of the case. Okcuoglu Mot. to Strike at 4–5. More specifically, MBUSA argues that Okcuoglu's incompletion of "his proposed comparison methodology renders his opinions unreliable and unhelpful." *Id.* at 5. However, Okcuoglu is under

CASE NO.: 5:16-CV-03370-EJD
ORDER DENYING MOTION FOR CLASS CERTIFICATION; DENYING MBUSA'S
MOTION TO STRIKE EXPERT REPORT OF D.C. SHARP AND MOTION TO STRIKE
EXPERT REPORT OF MURAT OKCUOGLU; DEEMING MOOT PLAINTIFF'S MOTION TO
STRIKE EXPERT REPORT AND TESTIMONY OF KEVIN LANE KELLER

1   no mandate to have completed his methodology at this juncture. Indeed, "[a]t the class

2   certification stage an expert is not charged with resolving factual disputes or determining the

3   merits of the case." *In re Toyota Motor Corp. Hybrid Brake Mktg.*, 2012 WL 4904412, at *4; *see*

4   *also Keegan v. Am. Honda Motor Co*., 284 F.R.D. 504, 515 (C.D. Cal. 2012) (holding that "[o]n a

5   motion for class certification, it is not necessary for the expert testimony to resolve factual

6   disputes going to the merits of plaintiffs' claim or claims."); *Ellis v. Costco Wholesale Corp*., 657

7   F.3d 970, 983 (9th Cir. 2011); *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 495 (C.D.

8   Cal. 2012). Thus, Okcuoglu's expert report need not be stricken because he has yet to complete

9   the comparison analysis methodology he has outlined.

10          Finally, MBUSA contends that Okcuoglu's comparison analysis proposal should be

11   stricken because it is not relevant and does not "fit" Hamm's theory of class certification.

12   Okcuoglu Mot. to Strike at 7. Specifically, MBUSA points to Okcuoglu's lack of conclusive

13   statements presently identifying the specific cause of the alleged defect present in the 722.9

14   transmissions as indicative of Okcuoglu's inability to identify the classwide defect at the crux of

15   Hamm's theory. *Id.* at 7. MBUSA cites to *Grodzitsky v. Am. Honda Motor Co.* in support of the

16   proposition that an expert must identify a specific defect, rather than "general 'potential'

17   problems," for the expert's opinion to fit a plaintiff's class certification argument. *Id.* at 8 (quoting

18   *Grodzitsky v. Am. Honda Motor Co.*, 957 F.3d 979, 986 (9th Cir. 2020)). MBUSA's reliance on

19   *Grodzitsky* is misplaced. In *Grodzitsky*, the expert opinion in question was stricken because the

20   expert "articulated no scientific basis for his observations. And the only testing he

21   performed was not designed to identify any defects, let alone a common defect." *Grodzitsky*, 957

22   F.3d at 986. That is not the case here. The very purpose of Okcuoglu's methodology is to identify

23   the precise cause of the defect allegedly present in the 722.9 transmissions by comparing

24   MBUSA's "repair kits" to unrepaired 722.9 transmissions.

25   //

26   CASE NO.: 5:16-CV-03370-EJD

27   ORDER DENYING MOTION FOR CLASS CERTIFICATION; DENYING MBUSA'S
     MOTION TO STRIKE EXPERT REPORT OF D.C. SHARP AND MOTION TO STRIKE

28   EXPERT REPORT OF MURAT OKCUOGLU; DEEMING MOOT PLAINTIFF'S MOTION TO
     STRIKE EXPERT REPORT AND TESTIMONY OF KEVIN LANE KELLER

United States District Court
Northern District of California

In any event, as Hamm points out, "a plaintiff is not required to identify the precise cause of a defect." *Wallace v. SharkNinja Operating, LLC*, 2020 WL 1139649, at *6 (N.D. Cal. Mar. 9, 2020); *Asghari v. Volkswagen Group of America, Inc*., 42 F. Supp. 2d 1306, 1326, n.72 (C.D. Cal. 2013); *Hardt v. Chrysler Grp. LLC*, 2015 WL 12683965, at *5 (C.D. Cal. June 15, 2015); *Barrera v. Jaguar Land Rover North Am*., LLC, 2020 WL 4003653, at *3 (C.D. Cal. Jun. 3, 2020); *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp.2d 1220, 1237, n.60 (C.D. Cal. 2011); *Ehrlich v. BMW North Am., LLC*, 801 F. Supp.2d 912 (C.D. Cal. 2010). Additionally, as the *Wallace* court notes, "it is typically difficult for a plaintiff to discern the mechanical workings of a product at the pleading stage." *Wallace*, 2020 WL 1139649, at *6. As such, Okcuoglu's expert report need not be stricken because he has yet to identify the specific cause of the alleged common defect at this stage. MBUSA's motion is denied.

### 2. Motion to Strike Expert Report of Dr. D.C. Sharp

As with Plaintiff's expert Okcuoglu, MBUSA does not dispute that Dr. Sharp is qualified to offer an expert opinion. Rather, reiterating many identical arguments in their opposition to class certification, MBUSA moves to exclude the expert report of Dr. Sharp for three reasons: (1) MBUSA alleges Dr. Sharp has failed to apply valid scientific methodology in calculating damages; (2) MBUSA alleges Dr. Sharp uses unreliable data in calculating damages and; (3) MBUSA alleges Dr. Sharp's damages model does not "fit" with Hamm's class certification theory. Def.'s Mot. to Strike the Expert Report of Pl.'s Expert D.C. Sharp at 1–2, Dkt. No. 102 ("Sharp Mot. to Strike").

### i. Sharp's Methodology

Plaintiff Hamm retained Dr. Sharp to calculate damages attributable to the allegedly defective 722.9 transmission on a classwide basis. Dr. Sharp performs this calculation relying on a hedonic regression model, a method frequently used in economics to ascertain the relative effect of variables on the price of a product. *See In re Qualcomm Antitrust Litig., 328 F.R.D. 280, 304–*

CASE NO.: 5:16-CV-03370-EJD
ORDER DENYING MOTION FOR CLASS CERTIFICATION; DENYING MBUSA'S MOTION TO STRIKE EXPERT REPORT OF D.C. SHARP AND MOTION TO STRIKE EXPERT REPORT OF MURAT OKCUOGLU; DEEMING MOOT PLAINTIFF'S MOTION TO STRIKE EXPERT REPORT AND TESTIMONY OF KEVIN LANE KELLER

United States District Court
Northern District of California

*05 (N.D. Cal. 2018).* In its motion to strike Dr. Sharp's expert report, MBUSA "does not—and could not—dispute that 'regression analysis is generally a reliable method for determining damages…and is a mainstream tool in economic study.'" *Id.* (quoting *In re High-Tech*, 2014 WL 1351040, at *14). As Hamm points out, "courts regularly recognize that hedonic regression is a widely accepted econometric methodology that satisfies the four *Daubert* factors of testability, peer review and publication, measureable error rate, and general acceptance." *Id.; see also In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 947 (C.D. Cal. 2015); *In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Practices & Prod. Liab. Litig.*, 2012 WL 4904412, at *4 (C.D. Cal. Sept. 20, 2012). The Court is satisfied that Hamm's expert, Dr. Sharp, has employed a valid scientific methodology by utilizing a hedonic regression.

### ii. Data and inputs used in Sharp's Methodology

MBUSA asserts that Dr. Sharp's damages model is fatally flawed because of the data inputs used in creating the regression model. Sharp Mot. to Strike at 2–3. Specifically, MBUSA attacks Dr. Sharp's sample size, the number of vehicle attributes included within the model, and the pricing data Dr. Sharp relied upon. *Id.* at 3. In any event, "district courts within and outside this district have often concluded that experts' decisions about what data to use in their analysis bear on the weight, not the admissibility, of expert testimony." *In re Qualcomm Antitrust Litig.*, 328 F.R.D. 280, 305 (N.D. Cal. 2018); *see also Grace v. Apple, Inc.*, 328 F.R.D. 320, 341 (N.D. Cal. 2018); *Elkies v. Johnson & Johnson Servs., Inc.*, 2018 WL 11223465, at *9 (C.D. Cal. Oct. 18, 2018); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2013 WL 124347, at *1 (N.D. Cal. Jan. 8, 2013); *In re High-Tech Employee Antitrust Litig.*, 2014 WL 1351040, at *20 (N.D. Cal. Apr. 4, 2014); *Brighton Collectible, LLC v. Believe Prod., Inc*., 2017 WL 440255, at *6 (C.D. Cal. Jan. 30, 2017); *Giuliano v. Sandisk Corp.*, 2015 WL 10890654, at *11 (N.D. Cal. May 14, 2015) ("The selection of variables to include in a regression analysis is normally a question that goes to weight of the expert's analysis rather than its admissibility."); *In re Static Random Access Memory*

CASE NO.: 5:16-CV-03370-EJD
ORDER DENYING MOTION FOR CLASS CERTIFICATION; DENYING MBUSA'S
MOTION TO STRIKE EXPERT REPORT OF D.C. SHARP AND MOTION TO STRIKE
EXPERT REPORT OF MURAT OKCUOGLU; DEEMING MOOT PLAINTIFF'S MOTION TO
STRIKE EXPERT REPORT AND TESTIMONY OF KEVIN LANE KELLER

*(SRAM) Antitrust Litig.*, No. 07-MD-01819-CW, 2010 WL 5071694, at *6 (N.D. Cal. Dec. 7, 2010); *In re Air Cargo Shipping Servs. Antitrust Litig.*, 2014 WL 7882100, at *49 (E.D.N.Y. Oct. 15, 2014) ("The determination of which dataset is most reliable is a merits question and does not preclude [an expert's] preference of one over the other."). Notably, the U.S. Supreme Court has held that an expert's selection of certain variables to include within a regression analysis will generally "affect the analysis' probativeness, not its admissibility." *Bazemore v. Friday*, 478 U.S. 385, 400, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986). Thus, MBUSA's criticisms regarding the data used and variables included or omitted within Dr. Sharp's damages model should be properly challenged in the adversarial process "through competing evidence and incisive cross-examination." *Murray v. S. Route Mar. SA*, 870 F.3d 915, 925 (9th Cir. 2017).

**iii. The "Fit" of Sharp's Methodology to Hamm's Legal Theory**

Next, MBUSA contends that Dr. Sharp's damages model does not "fit" Hamm's legal theory by arguing that the model does not measure damages attributable to any specific component or iteration of the 722.9 transmissions. Sharp Mot. to Strike at 5. However, as previously addressed above, MBUSA "overlooks Hamm's actual claim that all 722.9 transmissions, regardless of which version of conductor plate or valve bodies they possessed, were defective." Opp'n to Mot. to Strike the Report of Pl.'s Expert D.C. Sharp at 18, Dkt. No. 105 ("Sharp Opp'n"). Contrary to MBUSA's claims and when considering Hamm's legal theory, Dr. Sharp's damages model has no requirement to attribute damages to a specific component or iteration of the 722.9 transmissions when Hamm asserts that all of the 722.9 transmissions are defective, regardless of iteration or components present.

MBUSA's final argument against the "fit" of Dr. Sharp's damages model in regard to its purported failure to identify and include the date of disclosure of the alleged defect fails for lack of merit under same reasoning above. MBUSA cannot assert that a disclosure of the alleged defect never occurred and then simultaneously fault Hamm for failing to precisely identify when

United States District Court
Northern District of California

1    disclosure of the alleged defect occurred. In light of the following, this Court denies MBUSA's

2    motion to strike the expert report of Dr. Sharp.

3    **III.    Conclusion**

4          For the reasons set forth above, Plaintiff Hamm's motion for class certification is

5    DENIED. Defendant MBUSA's motion to strike the report of Plaintiff's expert Dr. D.C. Sharp

6    and motion to strike the report of Plaintiff's expert Murat Okcuoglu are DENIED. Because the

7    motion for class certification is denied, Plaintiff's motion to strike MBUSA's expert report and

8    testimony of Kevin Lane Keller is DEEMED MOOT.

9          **IT IS SO ORDERED.**

10   Dated: April 2, 2021

11

12                                              EDWARD J. DAVILA
                                                United States District Judge
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27   CASE NO.: 5:16-CV-03370-EJD
     ORDER DENYING MOTION FOR CLASS CERTIFICATION; DENYING MBUSA'S
     MOTION TO STRIKE EXPERT REPORT OF D.C. SHARP AND MOTION TO STRIKE
28   EXPERT REPORT OF MURAT OKCUOGLU; DEEMING MOOT PLAINTIFF'S MOTION TO
     STRIKE EXPERT REPORT AND TESTIMONY OF KEVIN LANE KELLER
                                                30

United States District Court
Northern District of California