UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TERRY HAMM, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MERCEDES-BENZ USA, LLC,<br><br>Defendant. | Case No.   5:16-cv-03370-EJD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS; GRANTING MOTION FOR SUMMARY JUDGEMENT; DENYING MOTION FOR CLASS CERTIFICATION**<br><br>Re: Dkt. Nos. 182, 183, 184 |

Plaintiff Terry Hamm ("Hamm") individually and Plaintiff Steven Chan ("Chan") individually and on behalf of a putative class (collectively, "Plaintiffs") bring this suit under the California Consumer Legal Remedies Act, Cal. Civ. Code §1750 et. seq. ("CLRA") alleging that Defendant, Mercedes-Benz USA, LLC ("MBUSA"), knew of and actively concealed defects in vehicle transmission systems.  Fourth Am. Compl. ("FAC"), ECF No. 180.

Before the Court are (1) MBUSA's motion to dismiss, (2) MBUSA's motion for summary judgment, and (3) Plaintiffs' motion for class certification.  Mot. to Dismiss ("MTD"), ECF No. 182; Mot. for Summ. J. ("MSJ"), ECF No. 183; Renewed Mot. for Class Cert., ECF No. 184.  All motions are fully briefed.  Opp'n to MTD, ECF No. 188; Reply in Supp. of MTD ("Reply ISO MTD"), ECF No. 192; Opp'n to MSJ, ECF No. 190; Reply in Supp. of MSJ ("Reply ISO MSJ"), ECF No. 193; Opp'n to Renewed Mot. for Class Cert., ECF No. 187; Reply in Supp. of Renewed Mot. for Class Cert. ("Reply ISO Mot. for Class Cert."), ECF No. 194.  The Parties, at the request of the Court, also submitted supplemental briefings on Plaintiffs' renewed motion for class certification.  Pl.'s Supp. Brief, ECF No. 200; Def.'s Supp. Brief, ECF No. 199.

Case No.: 5:16-cv-03370-EJD
ORDER GRANTING IN PART & DEN. IN PART MTD; GRANTING MSJ; DEN. CLASS CERT.
1

On March 28, 2024, the Court heard oral arguments from both Parties on all three motions. ECF No. 197. For the reasons explained below, the Court **GRANTS IN PART** and **DENIES IN PART** MBUSA's motion to dismiss, **GRANTS** Defendant's motion for summary judgment, and **DENIES** Plaintiffs' motion for class certification.

I.   **BACKGROUND**

This is a class action suit alleging that MBUSA failed to inform consumers about a defect in the 722.9 transmission's conductor plate that causes the transmission to prematurely fail before the end of its useful life. *See* FAC. This case has an extensive procedural history spanning nearly eight years, and the Court has issued numerous orders summarizing the essential allegations. *See, e.g.,* Order Granting Mot. for J. on the Pleadings, ECF No. 148; Order Den. Mot. for Class Cert., ECF No. 124. In light of this history, the Court will only summarize the procedural background and new facts relevant to this Order.

A.   **Procedural Background**

Hamm originally filed this case on behalf of himself and a class of other similarly situated vehicle owners in June 2016 alleging claims under both the CLRA and the California Unfair Competition Law ("UCL"). Compl., ECF No. 1. The Court granted MBUSA's motion for judgment on the pleadings as to Hamm's UCL claim, as well as the CLRA claim to the extent that it sought equitable relief, finding that Hamm had an adequate remedy at law. Order Granting J. on the Pleadings. The Court later denied Hamm's first motion for class certification, finding that Hamm was unable to meet the predominance and typicality requirements because Hamm was subject to unique non-reliance defenses. Order Den. Class Cert. 7–8, 20–23. Specifically, the Court found that Hamm would be unable to use common evidence to infer reliance across the class because Hamm never interacted with MBUSA or reviewed any materials from MBUSA prior to his purchase. *Id.*

Following these orders, the only claim moving forward was Hamm's individual CLRA claim for monetary damages. However, the Court permitted Plaintiffs to file an amended complaint adding new class representatives to cure the issues identified in the Court's order

denying class certification. *See* Order Dn. Mot. for Partial Recon., ECF No. 166. Given the late stage of litigation, the Court ordered an expedited schedule for dispositive motions regarding any new class representative, allowing the Parties to concurrently file a motion to dismiss, motion for summary judgment, and motion for renewed class certification. *See* Order to Pre-Trial Schedule, ECF No. 176. The Court also re-opened additional discovery, which closed on December 15, 2023. *Id.*

On December 14, 2023, Plaintiffs filed their Fourth Amended Complaint ("FAC") adding Chan as the new class representative and re-alleging their request for injunctive relief under the CLRA, and now all three expedited motions are before the Court.

### B.     Factual Background

Under the FAC, Hamm on behalf of himself, and Chan on behalf of himself and the class, allege one CLRA claim under five theories: (1) "representing that its goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have"; (2) "representing that its goods or services are of a particular standard, quality, or grade, if they are of another"; (3) "advertising goods and services with the intent not to sell them as advertised"; (4) "representing that its subscription service confers or involves rights, remedies, or obligations which it does not have or involve"; and (5) "representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not." FAC ¶ 29. The FAC defines that class as:

> All California owners and lessees of Mercedes-Benz vehicles equipped with the 722.9 7G Tronic transmission who have not received any free repairs to or free replacement of their 722.9 transmission by Defendant Mercedes-Benz USA, LLC ("MBUSA") or its agents. Excluded from this Class definition are all employees, officers, or agents of MBUSA. Also excluded from this Class definition are all judicial officers assigned to this case as well as their staff and immediate families.

*Id.* ¶ 20.

The FAC remains largely similar to the prior complaints apart from the additional facts regarding the new class representative, Chan, and his experience with his 2006 E350 ("Subject

Case No.:   5:16-cv-03370-EJD
ORDER GRANTING IN PART & DEN. IN PART MTD; GRANTING MSJ; DEN. CLASS CERT.
3

1   Vehicle")'s 722.9 transmission, as summarized below.

### 1. Chan Purchased the Subject Vehicle from His Neighbors.

Chan purchased the Subject Vehicle from his neighbors in 2020 for $7,000. Chan's Interrog. Resp. 1, ECF No. 183-3. The Subject Vehicle had approximately 100,000 miles and was approximately fourteen years old at the time of purchase. Dep. of Steven Chan ("Chan Dep.") 39:20–40:2, ECF Nos. 183-2, 190-6. Chan learned that the Subject Vehicle was for sale from his neighbors who were complaining to him about the Subject Vehicle. *Id.* at 34:20–25. The neighbors indicated that they were "fed up" with the Subject Vehicle because they spent too much money on various issues and asked if Chan wanted to take it. *Id.* at 24:25–35:2, 35:18–20, 51:10–14. While Chan knew that the neighbors were frustrated with the Subject Vehicle's repeated need for repairs, Chan accepted their offer to purchase the Subject Vehicle "as is" because he liked to work on cars and wanted the challenge. *Id.* at 35:1–5, 51:10–18. Chan did not have the Subject Vehicle professionally inspected prior to purchase, but he inspected it himself. *Id.* at 48:13–16. Chan looked under the hood and saw "quite a few changes" indicating that that there had been repairs made to the Subject Vehicle over time. *Id.* at 35:13–16, 36:7–10. Chan received no repair records but trusted that his neighbors were "meticulous" and believed that they already spent money to fix everything. *Id.* at 48:19–22, 49:9–19. Chan also test drove the Subject Vehicle and determined that it was "drivable" and "in good shape." *Id.* at 48:17–49:8.

### 2. Chan Visited an MBUSA Authorized Dealership Prior to His Purchase.

Chan alleges that about a month prior to his purchase, he went to Fletcher Jones Motor Cars of Fremont, a dealership authorized to sell and service MBUSA vehicles. *Id.* at 64:6–18. Chan testified that he recalls test driving either a 2006 or 2007 E350 during his visit. *Id.* at 78:1–3. A salesperson accompanied Chan on the test drive, during which time they discussed the car. *Id.* at 69:12–15, 70:12–14. Chan recalls learning that the car was not under warranty, but the salesperson did not inform Chan of any defects with the car's transmission. *Id.* at 73:9–15. Chan did not review any materials from the dealership, but he looked at a sticker on the car that provides the year and mileage information. *Id.* at 67:8–13, 75:7–10. Chan had also looked up a vehicle of

Case No.: 5:16-cv-03370-EJD
ORDER GRANTING IN PART & DEN. IN PART MTD; GRANTING MSJ; DEN. CLASS CERT.
4

the same make, model, and year on Craigslist prior to visiting the dealership. *Id.* Chan did not purchase this vehicle from the dealership because it was too expensive at $11,000. *Id.* at 72:4–16.

MBUSA submitted a declaration from the general manager at Fletcher Jones determining that, after a review of their business records, there were no used 2006 or 2007 Mercedes-Benz E-Class vehicles in inventory at Fletcher Jones Motor Cars during the time of Chan's visit, and the oldest Mercedes-Benz E-Class vehicles in inventory during this time was a model year 2017 E300, not the E350. Decl. of Mike Bates[1] ("Bates Decl.") ¶¶ 5, 6, ECF No. 24.

### 3. The Subject Vehicle Exhibited Transmission Failure Symptoms.

About two years after Chan purchased the Subject Vehicle, with approximately 110,000 miles, the Subject Vehicle exhibited the transmission defect symptoms at issue in this case. Chan Dep. 93:14–18. While driving the Subject Vehicle on a California roadway, Chan attempted to accelerate the vehicle, but the Subject Vehicle remained stuck in low gear. Chan's Interrog. Resp. 2. At the same time, the lights on the instrument panel illuminated, and the vehicle became stuck in "Limp Mode." *Id.* The Subject Vehicle remained stuck in low gear and "Limp Mode," and Chan had to slowly drive home in this condition. *Id.* Chan purchased a scanning tool from the internet to diagnose the Subject Vehicle's issue, which plugged into the Subject Vehicle and downloaded fault codes. Chan Dep. 101:17–102:20. The scan tool revealed a "stored code 1789 Fault present in control module Transmission (P0730)," as well as "0893 Hydraulic Fault In Transmission (Disengaging Shift Element Does Not Disengage). DTC Status Stored." Chan's Interrog. Resp. 3. Chan interpreted the codes as revealing a malfunction in the valve body or conductor plate. Chan Dep. 101:7–16. The Subject Vehicle has remained garaged at Chan's residence ever since. Chan's Interrog. Resp. 3. Other than this scan, Chan testified that "the car never got any real diagnostic over the years about the transmission problem" until the diagnostics

---

[1] Plaintiffs object to this declaration as hearsay on the ground that Bates did not personally interact with Chan during his dealership visit. Opp'n to MSJ 7 n.2. While the Court is inclined to overrule this objection under the business records exception pursuant to Federal Rule of Evidence 803(6), the Court does not rely on this declaration in its findings. The Court therefore declines to rule on this objection at this juncture.

| | |
|---|---|
| 1 | conducted for this litigation.  Chan Dep. 133:3–11. |
| 2 | **4.     The Parties Inspected the Subject Vehicle for Litigation Purposes.** |

Approximately one year after this incident, the Subject Vehicle was inspected by two separate mechanics for the purposes of this litigation—one Chan chose independently, and one arranged by MBUSA.  Decl. of Noah Yanowitz ("Yanowitz Decl."), ECF No. 183-10; Decl. of Eliseo Estrada[2] ("Estrada Decl."), ECF No. 183-21.  Neither mechanic found an issue with the valve body or conductor plate.  *See id.*

Chan first independently drove the Subject Vehicle to a mechanic at MBUSA of Marin in San Rafael, California on November 21, 2023, approximately one week prior to MBUSA's scheduled inspection set to occur at the same location.  Chan Dep. 127:16–18; 128:18–21.  Chan wanted to ensure that the mechanic diagnosing Subject Vehicle was neutral, so he did not inform this mechanic of the present lawsuit.  *Id.* at 147:20–25.  Eliseo Estrada, a service advisor at MBUSA of Marin, submitted a declaration stating that their technician's diagnostic did not indicate that the valve body or conductor plate caused the transmission symptoms, but instead concluded that the issue may have been due to worn clutch packs.  Estrada Decl. ¶¶ 5, 6.

During the scheduled visit the following week on November 28, 2023, Noah Yanowitz, a Product Analysis Engineer in MBUSA's Vehicle Compliance and Analysis Department, conducted an inspection on the Subject Vehicle, and similarly found that the shifting symptoms described by Chan were due to wear and tear, which would include worn clutch packs.  Yanowitz Decl. ¶ 6.  Yanowitz also observed that the codes Chan references were stored in the Subject Vehicle's computers long before his purchase.  *Id.* ¶¶ 13, 14, 15.  Yanowitz came to this conclusion by observing that the fault codes from Chan's photo did not appear as "active," and the Subject Vehicle had approximately 58,704 miles at the time the fault code was stored, but Chan

---

[2] Plaintiffs object to this declaration as hearsay on the ground that Estrada did not personally inspect the car, but instead shares the observations made by a different mechanic.  Opp'n to MSJ 5.  While the Court is inclined to overrule this objection under the business records exception pursuant to Federal Rule of Evidence 803(6), the Court does not rely on this declaration in its findings.  The Court therefore declines to rule on this objection at this juncture.

Case No.:   5:16-cv-03370-EJD
ORDER GRANTING IN PART & DEN. IN PART MTD; GRANTING MSJ; DEN. CLASS CERT.
6

purchased the vehicle when it had about 100,000 miles. *Id.* Yanowitz also concluded that Chan's transmission has a third-generation conductor plate ("VGS3"). *Id.* ¶ 16.

## II. MOTION TO DISMISS

### A. Legal Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. Rule Civ. Pro. 8(a)(2). While a plaintiff need not offer detailed factual allegations to meet this standard, she is required to offer "sufficient factual matter . . . 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, a complaint must (1) "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively[,]" and (2) "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must generally accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S at 664. The court also must construe the alleged facts in the light most favorable to the plaintiff. *See Retail Prop. Trust v. United Bd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014) ("[The court] must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party."). However, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

If the court concludes that a 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

### B. Discussion

MBUSA requests that the Court dismiss Chan's CLRA claim with prejudice, arguing that: (1) Chan's request for equitable relief under the CLRA is foreclosed because he has an adequate remedy at law; and (2) Chan has also failed to plead facts sufficient to state a claim for monetary

damages under the CLRA.[3]  *See* MTD 1.

### 1. Dismissal of Request for Equitable Relief Due to Adequate Remedy at Law

As summarized above, the Court granted MBUSA's motion for judgment on the pleadings as to Hamm's request for equitable relief under CLRA, finding that Hamm had an adequate remedy at law in the form of monetary damages. Order Granting J. on the Pleadings. MBUSA argues that Plaintiffs' renewed claim for equitable relief under the CLRA (for "restitution or disgorgement" and "declaratory equitable and injunctive relief") is foreclosed by the Court's prior order granting judgment on the pleadings. MTD 2–3.

Plaintiffs argue that Chan's request for equitable relief is appropriate because Chan is in a different posture than Hamm. Opp'n to MTD 8. Plaintiffs maintain that the Court dismissed Hamm's request for equitable relief because Hamm had already spent money on his repairs, which foreclosed his ability to seek equitable relief requiring that MBUSA fix the vehicle. *Id.* at 8–9. Plaintiffs argue that Chan is distinguishable because Chan has not spent money to repair or replace his transmission, therefore declaratory judgment would resolve which party, MBUSA or Chan, is responsible for undertaking the repair of his 722.9 transmission. *Id.* at 9.

As an initial matter, the FAC does not separate Hamm and Chan under Count I's request for equitable relief, referring to them collectively as "Plaintiffs." *See, e.g.,* FAC ¶ 33. Requesting both monetary and equitable relief for all "Plaintiffs" would be foreclosed by the Court's order "dismiss[ing] [Hamm's CLRA claim] with prejudice to the extent it seeks equitable relief." Order Granting Summ. J. 6. While this wording may have been the result of mere oversight, the Court reiterates it's holding that Hamm is precluded from seeking equitable relief because he has an adequate remedy at law. *See id.*

As to Chan, Plaintiffs misinterpret the Court's holding. The Court did not focus its analysis on the fact that Hamm had already paid for his repairs. The Court found that monetary

---

[3] MBUSA also originally moved for dismissal for failure to file a CLRA venue affidavit but withdrew this argument in its reply. *See* Reply ISO MTD 1 n.1.

Case No.: 5:16-cv-03370-EJD
ORDER GRANTING IN PART & DEN. IN PART MTD; GRANTING MSJ; DEN. CLASS CERT.
8

1    relief is an adequate remedy because Hamm made explicit reference to monetary damages on the
2    face of the complaint, specifically pursuing damages in the form of out-of-pocket costs and/or
3    diminution in value.  Order Granting Summ. J. 3–4 (citing *Sonner v. Premier Nutrition Corp.*, 971
4    F.3d 834 (9th Cir. 2020)).  The Court quoted two paragraphs from the prior complaint where
5    Hamm requested both monetary and equitable relief for the same injury, and the FAC includes the
6    same language in its request for both monetary and equitable relief for the same injury.  *Compare*
7    Second Am. Compl. ¶¶ 33, 34, *with* FAC ¶¶ 31, 33.  Plaintiffs have failed to present any new
8    arguments to show that the monetary award they request could not remedy the need for repairs or
9    replacement parts or the diminished value of a vehicle.
10       Therefore, the Court **GRANTS** MBUSA's motion to dismiss the claims for equitable
11   relief.

### 2. Dismissal of CLRA Claim for Failure to Plead Sufficient Facts

MBUSA also argues that Chan has failed to plead facts sufficient to state a claim for monetary relief under the CLRA because (1) Chan's allegations are impermissibly boilerplate, (2) Chan has failed to allege the details of his purchase transaction, (3) Chan has not alleged that he is a "consumer," and (4) Chan has not alleged facts to show a premature failure.  The Court will address each argument in turn.

#### a. Boilerplate Language and Failure to Plead Purchase Facts

MBUSA argues that Plaintiffs copied and pasted boilerplate CLRA statutory language into the FAC without pleading facts specific to the language.  MTD 4.  For example, MBUSA highlights that Chan bases his CLRA claim in part on the existence of a "subscription service" that is never identified, as well as "alleged advertisements and representations" without specifying what advertisements or other sales material are at issue.  *Id.*  MBUSA also argues that Chan failed to plead the specific facts of his purchase transaction, i.e., when, where, or from whom he purchased the Subject Vehicle.  *Id.*

Plaintiffs did not address MBUSA's arguments regarding the subscription service or advertisements in their opposition, although at the hearing Plaintiffs represented that the inclusion

United States District Court
Northern District of California

1  of the subscription service claim was an error.  Tr. of Proceedings Held on 03/28/2024, at 15:3–

2  22.  Plaintiffs did, however, argue that Chan adequately pled facts regarding his purchase of the

3  Subject Vehicle.  Opp'n to MTD 10.  For example, Chan alleged what vehicle he purchased, his

4  pre-purchase research, how his transmission malfunctioned, and how he had the opportunity to

5  learn of any defect disclosure from MBUSA.  *Id.*  Plaintiffs maintain that these facts are sufficient.

6  *Id.*

7  While the Court agrees with MBUSA's characterization of the subscription or

8  advertisement theories and observes that the details regarding Chan's purchase transaction are

9  thin, viewing all facts in the light most favorable to the Plaintiffs, the Court otherwise finds that

10 Plaintiffs have pled facts sufficient to state Chan's CLRA under the remaining theories.  For

11 example, Plaintiffs pled that Chan is the owner of the Subject Vehicle, MBUSA had the

12 opportunity to disclose the defects, MBUSA did not disclose any defect, Chan would not have

13 purchased the car had he known of the defect, and Chan was harmed in the form of now owning a

14 car with a diminished value.  *See, e.g.,* FAC ¶ 9.  The Court is unpersuaded by MBUSA's

15 argument that more is required to survive a 12(b)(6) motion.[4]

16 **3.    Failure to Allege Consumer Status**

17 MBUSA also argues that Chan has failed to explicitly plead to being a "consumer" who

18 purchased the vehicle for personal, family, or household use, as required under the CLRA.  MTD

19 5.  Plaintiffs argue that Chan's status as a "consumer" can be assumed given that there are no facts

20 to suggest he used the car in any other capacity.[5]  Opp'n to MTD 7–8.

---

[4] It is true that Plaintiffs' claims are fraud-based and thus Plaintiffs must meet the heightened requirements of Rule 9 in pleading facts regarding the conduct charged; however, Plaintiffs are not alleging any fraud in the purchase transaction with his neighbors.  *See, e.g., Vess v. CibaGeigy Corp. U.S.A.*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by the who, what, when, where, and how *of the misconduct charged*.") (emphasis added) (cleaned up).  Rather, Chan alleges fraud in MBUSA's failure to disclose the defect, and MBUSA did not argue that the details regarding MBUSA's conduct were impermissibly vague.

[5] Plaintiffs request that the Court take judicial notice of the Subject Vehicle's title showing Chan's name as the owner, rather than the name of, for example, a business.  Opp'n to MTD 7.  The Court finds a review of this document unnecessary in reaching its conclusion that Plaintiffs have pled facts sufficient to state a claim, thus the Court will not rule on this request at this time.

Case No.:   5:16-cv-03370-EJD
ORDER GRANTING IN PART & DEN. IN PART MTD; GRANTING MSJ; DEN. CLASS CERT.
10

United States District Court
Northern District of California

The Court finds that the facts support the logical conclusion that Chan pleads as a "consumer." All case law supplied by MBUSA where courts dismissed CLRA claims for failure to plead "consumer" status involved plaintiffs who affirmatively pled that the goods or services were purchased for professional use. *Klein v. Parker Univ.*, No. 20-CV-03194-RS, 2021 WL 5414330, at *1 (N.D. Cal. July 12, 2021) (alleging use for business and educational purposes); *Frezza v. Google Inc.*, No. 12-CV-00237-RMW, 2012 WL 5877587, at *4 (N.D. Cal. Nov. 20, 2012) (alleging use for business purposes); *Zepeda v. PayPal, Inc.*, 777 F. Supp. 2d 1215, 1222 (N.D. Cal. 2011) (same). There are no comparable facts here. Plaintiffs allege that MBUSA's conduct resulted in, or was intended to result in, the sale of its vehicles to customers for personal, family, or household use. FAC ¶ 30. While it is true that Chan does not specifically identify his purchase as one made for personal, family, or household use, it can be reasonably inferred in these circumstances, absent any facts to suggest the contrary, that Chan includes himself in the group of consumers who purchased a vehicle for these uses.

### 4. Failure to Allege Premature Failure

Finally, MBUSA argues that Chan has not alleged that the transmission's failure was premature given its age and milage. MTD 5–6. Plaintiffs argue that whether the Subject Vehicle did in fact prematurely fail before the end of its useful life is a factual question that provides no basis for dismissal of a pleading. Opp'n to MTD.

The Court agrees with Plaintiffs. Plaintiffs have pled facts alleging how the Subject Vehicle failed and the mileage and age of the Subject Vehicle at the time of failure—whether these circumstances may be considered a "premature failure" is a factual question that would be established through the course of discovery.

\* \* \*

Therefore, the Court **DENIES** MBUSA's motion to dismiss Chan's claim for monetary relief under the CLRA.

### C. Conclusion

The Court **GRANTS** MBUSA's motion to dismiss Plaintiffs' request for equitable relief

Case No.: 5:16-cv-03370-EJD
ORDER GRANTING IN PART & DEN. IN PART MTD; GRANTING MSJ; DEN. CLASS CERT.
11

1    under the CLRA and **DENIES** MBUSA's motion to dismiss Chan's CLRA claim for monetary

2    relief.

3    **III.   MOTION FOR SUMMARY JUDGMENT**

4        **A.   Legal Standard**

5        Under Federal Rule of Civil Procedure 56, a court may grant summary judgment only

6    when the moving party shows that there is no genuine dispute of material fact. A genuine dispute

7    exists if there is sufficient evidence that a reasonable fact finder could decide in favor of the

8    nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And that dispute is

9    material if it might affect the outcome of the suit. *Id.* In determining if a genuine dispute of

10   material fact exists, a court must "tak[e] the evidence and all reasonable inferences drawn

11   therefrom in the light most favorable to the non-moving party." *Torres v. City of Madera*, 648

12   F.3d 1119, 1123 (9th Cir. 2011).

13       The moving party bears the burden of persuading the Court that there is no genuine dispute

14   of material fact, and it also bears the initial burden of producing evidence that demonstrates there

15   is no dispute. *Cunningham v. Medtronic, Inc.*, 2018 WL 4053446, at *2 (N.D. Cal. Aug. 24,

16   2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). When the moving party does

17   not bear the ultimate burden of persuasion at trial, it may satisfy its burden of production at

18   summary judgment by either (a) "produc[ing] evidence negating an essential element of the

19   nonmoving party's claim or defense" or (b) "show[ing] that the nonmoving party does not have

20   enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan*

21   *Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving

22   party fails to satisfy its burden of production, the nonmoving party need not produce anything—

23   summary judgment will already have been defeated. *Id.* at 1102–03. But if the moving party

24   fulfills its burden of production, the nonmoving party must produce evidence supporting its claim

25   or defense. *Id.* at 1103. In that scenario, the nonmoving party will defeat summary judgment by

26   producing enough evidence to create a genuine issue of material fact; failing that, the moving

27   party will prevail on its motion. *Id.*

28   Case No.: 5:16-cv-03370-EJD
ORDER GRANTING IN PART & DEN. IN PART MTD; GRANTING MSJ; DEN. CLASS CERT.
12

### B. Discussion

MBUSA offers various arguments as to why summary judgment is appropriate here, including that there is no evidence that the VGS3 has a defect; there was no manifestation of a defect; Chan did not actually or reasonably rely on any statement or omission from MBUSA in deciding to purchase the Subject Vehicle from his neighbors; and the Subject Vehicle was already past its useful lifespan when Chan purchased it. *See* MSJ.

While many of MBUSA's arguments are persuasive, the Court only finds it necessary to rest its holding on two facts: (1) the Subject Vehicle's 722.9 transmission is equipped with the VGS3 conductor plate, and (2) there is no evidence in the record that the VGS3 conductor plate is defective.

#### 1. The Subject Vehicle Is Equipped with a VGS3 Conductor Plate.

MBUSA has presented evidence from Yanowitz's declaration that Chan's 722.9 transmission has a VGS3, third-generation, conductor plate. Yanowitz Decl. ¶ 16. Plaintiffs did not address this fact, or Yanowitz's declaration whatsoever, in their opposition to MBUSA's motion for summary judgment. However, in their response to MBUSA's statement of undisputed facts, Plaintiffs disputed whether the Subject Vehicle has a VGS3 conductor plate by citing to an MBUSA-produced spreadsheet of vehicles with the 722.9 transmission showing that the 722.9 transmission in 2004-2007 model years were originally outfitted with VGS1 conductor plates, not VGS3. Chan's Resp. to MBUSA's Separate Statement of Undisputed Facts 2, ECF No. 190-9.

The Court finds there is no genuine dispute that the Subject Vehicle is equipped with a VGS3 conductor plate. It is undisputed that the computer downloads for the Subject Vehicle confirmed it has a VGS3 conductor plate. Plaintiffs have not challenged the production or interpretation of this computer download or offered any affirmative evidence identifying any other generation of the conductor plate in the Subject Vehicle.

While Plaintiffs cite to a chart indicating the VGS1 was originally outfitted for vehicles of the same year as the Subject Vehicle, this evidence is not probative. The VGS3 is not only present in vehicles originally outfitted with it during manufacturing—Plaintiffs' own expert, Murat

Case No.: 5:16-cv-03370-EJD
ORDER GRANTING IN PART & DEN. IN PART MTD; GRANTING MSJ; DEN. CLASS CERT.
13

Okcuoglu, testified that "VGS is both installed in production transmissions and sold as a spare part and also sold as a repair kit." Dep. of Murat Okcuoglu ("Okcuoglu Dep.") 163:16–19, ECF No. 100-2. Okcuoglu went so far as specifically testifying that if a 2006 vehicle, the same year as the Subject Vehicle, needed to replace the conductor plate, the repair kit would allow a person to take out the conductor plate, without removing the valve body, and insert the VGS3. *Id.* at 199:3–18. In other words, this chart identifying which conductor plate was installed in the Subject Vehicle at the time of production does not provide the evidence necessary for a jury to reasonably identify which generation conductor plate was present in the Subject Vehicle at the time of purchase. This is particularly true considering that Chan purchased the Subject Vehicle second hand when it was fourteen years old, with an estimated 100,000 miles, and Chan admittedly observed quite a few changes indicating that that there had been repairs made to the Subject Vehicle over time.

The Court also finds there is no genuine dispute that the VGS3 was present in the Subject Vehicle at the time of Chan's purchase. Chan admitted to never having the Subject Vehicle's transmission repaired and made no suggestion that he had installed a transmission repair kit during his ownership of the Subject Vehicle, foreclosing the possibility that Chan purchased the Subject Vehicle equipped with a defective VSG1 and replaced it with a VGS3 during his ownership.

Ultimately, Plaintiffs have provided no information specifically regarding the Subject Vehicle. Plaintiffs had the ability to submit competing evidence specific to the Subject Vehicle, such as another mechanic's inspection indicating which generation of conductor plate is present, but they did not. *See, e.g., Triton Energy Corp. v. Square D Co.*, 68 F3d 1216, 1221 (9th Cir. 1995) ("[I]nferences may be drawn from a nonmoving party's direct and circumstantial evidence to establish a genuine issue of material fact so long as such evidence was of sufficient 'quantum or quality.' We have also held in this context that our 'inquiry focuses on whether the nonmoving party has come forward with sufficiently "specific" facts from which to draw reasonable inferences about other material facts that are necessary elements of the nonmoving party's claim.'") (quoting *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 632 n.3 (9th Cir. 1987)); *see also Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of

Case No.: 5:16-cv-03370-EJD
ORDER GRANTING IN PART & DEN. IN PART MTD; GRANTING MSJ; DEN. CLASS CERT.
14

evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party].").

### 2. There Is No Evidence that the VGS3 Conductor Plate Is Defective.

MBUSA also argues that Plaintiffs have failed to show that the VGS3 conductor plate in the 722.9 transmission is defective, highlighting testimony from Plaintiffs' expert Okcuoglu that the VGS3 is "non-defective," and is not the "suspect conductor plate" because it was a "redesigned part." MSJ 8 (citing Okcuoglu Dep.). Plaintiffs did not address this argument in their opposition.

The Court cannot find any evidence in the record to show that the 722.9 transmission with the VGS3 conductor plate is defective.[6] In support of the original motion for class certification, Plaintiffs provided Okcuoglu's export report explaining how he *planned* to determine whether a defect exists across 722.9 transmission conductor plate generations. Mot. for Class Cert. 11, 13, ECF No. 92. Plaintiffs described this as their "roadmap" to establishing a common defect. *Id.* While this was sufficient for purposes of establishing commonality in a motion for class certification, it is insufficient to defend a motion for summary judgment. At this stage, Plaintiffs' claim that the VGS3 contains a defect must be supported with evidence, not a plan to produce evidence. All discovery is complete now, and Plaintiffs have not referenced any new report applying Okcuoglu's methodologies to find a defect in the VGS3. Notably, Plaintiffs have also neither made a request for additional discovery nor indicated that they intend to seek additional discovery on this matter.

Not only have Plaintiffs failed to produce any evidence that the VGS3 is defective, but the only evidence in the record suggests[7] that the VGS3 is *not defective*. Plaintiffs' own expert

---

[6] The Court notes that this analysis does not concern the *manifestation* of the defect, which Plaintiffs argue is irrelevant because they pled a diminished value theory. While the Court is not persuaded that this argument is supported by the FAC, given that the FAC also requests relief for having to "expend money for, inter alia, the repair or replacement of the transmission components," FAC ¶ 31, even under a diminished value theory, Plaintiffs must still offer evidence to prove that a defect in the transmission exists.

[7] To be clear, the Court does not accept MBUSA's representation that Okcuoglu affirmatively found no defect in the VGS3—Okcuoglu was adamant that he had not come to any conclusions

Case No.: 5:16-cv-03370-EJD
ORDER GRANTING IN PART & DEN. IN PART MTD; GRANTING MSJ; DEN. CLASS CERT.
15

Okcuoglu suspected "that the third generation conductor plates, which is the repair kit also, would not be defective," testifying: "[O]nce the third generation conductor plate became available, my initial impression is that those recurrent and frequent failures have subside[d]. That's why my impression is that not all variants of the transmission would be defective." *Id.* at 135:12–18, 136:1–4. Indeed, Okcuoglu planned to establish a common defect by comparing the conductor plate found in the repair kit, which would include the VGS3, to other conductor plates of previous generations to discern how the repair kit addressed issues in the former generations. *See id.*

### C.  Conclusion

Because Chan purchased the Subject Vehicle equipped with a VGS3 conductor plate, and Plaintiffs have failed to put forward any evidence that the VGS3 is defective, the Court **GRANTS** MBUSA's motion for summary judgment as to Chan's CLRA claim. The Court finds it unnecessary to address MBUSA's remaining arguments regarding reasonable reliance and the damages model.

## IV.  RENEWED MOTION FOR CLASS CERTIFICATION

Because the Court granted summary judgment as to Chan's claims, and Chan was the only named class representative, the class currently does not have a representative. The Court cannot grant Plaintiffs' motion for class certification without a named class representative. *See* Fed. R. Civ. P. 23. Therefore, the Court **DENIES** Plaintiffs' motion for class certification.

## V.  CONCLUSION

Based on the foregoing, the Court **GRANTS IN PART AND DENIES IN PART** MBUSA's motion to dismiss, **GRANTS** Defendant's motion for summary judgment as to Chan's claims, and **DENIES** Plaintiffs' motion for class certification.

**IT IS SO ORDERED.**

Dated: June 26, 2024

EDWARD J. DAVILA
United States District Judge

---

regarding whether or not there was a defect in any generation of the transmission.